**John Owen TYLER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 23784.**

United States Court of Appeals
Fifth Circuit.

July 10, 1968.

Wesley R. Asinof, Atlanta, Ga., for appellant.

Allen L. Chancey, Jr., Asst. U. S. Atty., Atlanta, Ga., Owen A. Neff, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before COLEMAN and AINSWORTH, Circuit Judges, and CARSWELL, District Judge.

CARSWELL, District Judge:

Appellant was convicted by a jury on 3 counts of a 25 count indictment for wilful failure to file excise tax returns and to pay excise taxes imposed upon gambling operations.

This appeal attacks the rulings of the trial court (1) in denying dismissal of the indictment; (2) in refusing a requested charge; (3) in allowing the jury to separate overnight during deliberations; (4) in accepting the jury's verdict on 3 counts of the indictment the following morning; and (5) in declaring a mistrial on the remaining counts.

We affirm on the first four issues presented, all of which have to do with Counts Five, Seven, and Eight upon which appellant was convicted. The record shows that the fifth point directed solely to other counts has not been presented to the district court for its necessary initial consideration. It is, moreover, immaterial to the judgment of conviction appealed from and here affirmed.

## I. *Sufficiency of the Indictment*

The entire thrust of appellant's contention here is that the indictment, in its several counts, charges him with the acceptance of wagers but does not allege that acceptance was on his account or that such wagers were "placed with him." He urges that the acceptance of wagers does not attach liability for the payment of the excise tax and therefore no federal crime is charged and the indictment should have been dismissed.

We do not agree.

The most relevant portions of the excise tax statutes are:

(1) 26 U.S.C. § 4401

"(a) Wagers.—There shall be imposed on wagers, as defined in section 4421, an excise tax equal to 10 percent of the amount thereof.

\*      \*      \*      \*      \*      \*

"(c) Persons Liable for Tax.—Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. \*   \*   \*"

(2) 26 U.S.C. § 4421

"For purposes of this chapter—

(1) Wager.—The term 'wager' means—

(A) Any wager with respect to a sports event or a contest placed with a person engaged in the business of accepting such wagers, \*   \*   \*"

Also 26 CFR, Section 44.4401–2, provides, in part, as follows:

"Person liable for tax—(a) *In general.* (1) Every person engaged in the business of accepting wagers with respect to a sports event or a contest is liable for the tax on any such wager accepted by him. \*   \*   \* To be liable for the tax, it is not necessary that the person engaged in the business of ac-

cepting wagers \*   \*   \* physically receive the wager. \*   \*   \* Any wager \*   \*   \* received by an agent or employee on behalf of such person shall be considered to have been accepted by and placed with such person."

We can find no logic at all in appellant's contention that the specific words *placed with him* must be enunciated in an indictment to state a valid charge under Section 4401(c), supra, where the words "engaged in the business of accepting wagers \*   \*   \*" is specifically set forth.

In the context of this statute the words "accepting wagers" are synonymous with the phrase "wagers placed with him" and "on his account." This interpretation is reflected in a portion of 26 CFR 44.4401–2 which states: "Any wager \*   \*   \* received by an agent or employee on behalf of such person shall be considered to have been *accepted by and placed with such person.*" (Emphasis added.) [1]

The legal efficacy of regulations such as this has been recognized by the Supreme Court. In Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 157, 64 L.Ed. 297 (1920):

" \*   \*   \* It is settled by many recent decisions of this court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; United States v. Birdsall, 233 U.S. 223, 231, 34 S.Ct. 512, 58 L.Ed. 930; United States v. Smull, 236 U.S. 405, 409, 411, 35 S.Ct. 349, 59 L.Ed. 641; United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 61 L.Ed. 926."

---

1. The authority to promulgate 26 CFR 44.4401–2 is contained in 26 U.S.C. § 7805(a) which states:

"(a) Authorization.—Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary or his delegate shall prescribe all needful rules and regulations \*   \*   \* as may be necessary by reason of any alteration of law in relation to internal revenue."

Moreover, this is consonant with the legislative history of these excise tax statutes. In both the Senate and House Reports the following statement appears:

"A person is considered to be in the business of accepting wagers if he is *engaged as a principal* who, in accepting wagers, does so on his own account. The principals in such transactions are commonly referred to as 'bookmakers' although it is not intended that any technical definition of 'bookmaker', such as the maintenance of a handbook or other device for the recording of wagers, be required * * *. Persons who receive bets for principals are sometimes known as 'bookmakers' agents' or as 'runners.'" [Emphasis supplied.] H.R.Rep.No.586, 82d Cong. 1st Sess. 56 (1951); Sen.Rep.No.781, 82d Cong. 1st Sess. 114 (1951), U.S. Code Cong. and Adm.Service 1951, pp. 1839, 2091.

We conclude that the district court properly denied the motion to dismiss the indictment and agree with its statement that:

"* * * under the language and plain meaning of the applicable statutes and regulations, wagers are not considered as having been 'placed' with an individual until such time as they have been 'accepted' by him. The contractual nature of the wager requires an acceptance, and it is not until an acceptance has been manifested that a wager may be considered as having been 'placed'. Thus, the indictment charging that wagers were 'accepted' by the defendant sufficient[ly] states an offense under 26 U.S.C., § 7201, and 26 U.S.C., § 7203, regarding the liability of the defendant for taxes on wagers 'placed' with him. Hagner v. United States, 285 U.S. 427 [52 S.Ct. 417, 76 L.Ed. 861]; Spies v. United States, 317 U.S. 492 [63 S.Ct. 364, 87 L.Ed. 418]; United States v. McCormick [2 Cir.], 67 F.2d 867, cert. den. 291 U.S. 662 [54 S.Ct. 438, 78 L.Ed. 1054]; United States v. Pepe [D.C.], 198 F.Supp. 226; United States v. Manos [3 Cir.], 340 F.2d 534."

## II. *Requested Instruction*

The prosecution under Counts Five, Seven, and Eight was under 26 U.S.C. § 7203 as noted before. The trial court refused appellant's requested instruction to the jury that another section of the gambling excise statute, i. e., 26 U.S.C. § 7262, is a lesser included offense and that the jury would be authorized therefore to return, alternatively, one of three forms of verdict, i. e., not guilty, or guilty of violation of Section 7203, or guilty of violation of Section 7262, depending upon the jury's findings on the evidence presented.

The two sections are entirely separate and distinct entities. Section 7262 reads:

"Any person who does any act which makes him liable for special tax *under subchapter B of chapter 35* without having paid such tax, shall, besides being liable to the payment of the tax, be fined not less than $1,000 and not more than $5,000." (Emphasis added.)

Subchapter B of Chapter 35 is entitled "Occupational Tax," 26 U.S.C. § 4411. Section 7203, on which the prosecution was based, makes it an offense to wilfully fail to file wagering *excise* tax returns as required by 26 U.S.C. § 4401 which is contained in *Subchapter A* of Chapter 35 and therefore has no relation whatsoever to Section 7262.

The complete answer to appellant's contention here is that he was not charged in these counts with wilful failure, in violation of Section 7203, to pay the special occupational tax. If he had been so charged then Section 7262 would indeed have been a lesser included offense.

The trial court quite properly denied what would have been an erroneous instruction.

## III. *Separation of Jurors*

Next it is urged that it was reversible error for the district court to allow the jurors to separate overnight after they had begun their deliberations. No objection was made at the time but appel-

lant says that he could not have done so in the presence of the jurors without incurring their prejudice. A general objection was made the following morning without suggestion that there had been actual prejudice in any specific way.

A review of the record here shows no suggestion of prejudice whatsover by this procedure, nor is there any reason advanced why an objection could not have been made in the absence of the jury. Assuming, arguendo, that a timely objection had been made there still is nothing to suggest that the trial court would have abused its discretion by overruling it. Appellant concedes that the trial court has broad discretion to allow the jurors to separate during the course of the trial and prior to the submission of the case to them for deliberation, but urges that jurors in criminal cases may not be dispersed, as a matter of the court's discretion or otherwise without the accused's consent, at any time after submission of the case to them until finally discharged. This is advanced as a proposition stemming from the Fifth Amendment and one which sweeps away all necessity for any factual showing or suggestion of actual or implied prejudice to the defendant on trial. Appellant states the court may not prejudice his right to a verdict "by placing the jurors in a position of comfort whereby their deliberations may be looked on in a different light the next day."

To fashion an inflexible rule as urged here would in our judgment be at least as likely to create potentially prejudicial situations as to cure them. There are indeed countless circumstances when jurors should be sequestered. To catalogue these many splendored variables would be endless—and totally unproductive. The more obvious ones relate to the danger of adverse publicity. In many situations it is not difficult to recognize that defendant's right to a fair trial has been actually prejudiced where *facts* are shown. To presume without an inference of factual prejudice that a recess of the jurors, at any particular point, operates as a matter of law to the prejudice of the de-

fendant is logically untenable. There is much to be said for the view that jurors, even as judges, are more likely to perform their duty fairly and correctly when they are not subjected to extended periods of arbitrary and pointless personal confinement. Mr. Justice Holmes commenting in 1910 on the general role of jurors said in Holt v. United States, 218 U.S. 245, 249, 31 S.Ct. 2, 5, 54 L.Ed. 1021, "* * * there is force in the judge's view that if juries are fit to play the part assigned to them by our law, they will be able to do what a judge has to do every time that he tries a case on the facts without them, and we cannot say that he was wrong in thinking that the men before him were competent for their task."

There is no factual showing of prejudice here, nor is any suggested by inference or otherwise. Nor can we raise the demand for sequestration of a jury after submission to the level of a Constitutional *sine qua non*. There are widely divergent practices and procedures with respect to the goings and comings of jurors within our federal system and, for that matter, among the various states, and there does not appear to be any compelling reason to freeze this aspect of jury service into rigid or ritualistic uniformity.

Some of these procedural matters have been subject of specific legislation, and others have developed through individual court rule or practice. The Seventh Circuit has set rather stringent restrictions on the separation of jurors after deliberations have begun in its opinions in United States v. D'Antonio, 342 F.2d 667 (1965), and United States v. Panczko, 353 F.2d 676 (1965). Even the majority of the court in these cases, however, recognized that there are some circumstances which allow for the exercise of judicial discretion by distinguishing, and not overruling, that court's prior opinion in Lucas v. United States, 275 F. 405 (10th Cir. 1921), where lack of suitable quarters for jurors, coupled with appropriate instruction of the court, combined to make the separation permissible. This

rigid rule of sequestration of jurors follows the Massachusetts' view as expressed in Commonwealth v. Della Porta, 324 Mass. 193, 85 N.E.2d 248 (1949), but whatever its historical origin it has not had wide acceptance. As noted in Judge Swygert's dissent in *D'Antonio*, supra,

> "Moreover, separation of the jury during deliberation of its verdict and separation during the course of the trial are not logically distinguishable. If jurors are apt to be influenced by outside contacts during periods when they are separated while deliberating, they are equally apt to be influenced by those contacts during the trial. The protection against such evil ordinarily is provided by an admonition from the judge and by an adherence to the admonition by conscientious jurors. When circumstances demand, confinement should be ordered. This, however, is a matter that ought to be left to the sound judgment of the trial judge."

█ This Court has aligned itself with the predominant view as expressed most recently in Grant v. United States, 368 F.2d 658 (5th Cir., 1966), that juries may be dispersed in the discretion of the trial judge, and absent a showing of actual prejudice its exercise of that discretion will not be overturned. See also Estes v. United States, 335 F.2d 609, 615 (5th Cir. 1964), cert. den. 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559, rehearing den. 380 U.S. 926, 85 S.Ct. 884, 13 L.Ed. 2d 814.

Judge Bell, speaking for the Court in *Grant*, supra, noted:

> "There is likewise no merit in the contention that the court erred in allowing the jury to separate after submission of the case. There was no objection to the procedure. There is no suggestion of prejudice from the separation."

The case under consideration here virtually parallels the facts and requires the same result as *Grant*, supra. There are two differences. Here defense counsel did object but not until the morning after dispersal and, secondly, the jury had already reached, before dispersal, what was ultimately its final verdict.

The failure to make timely objection to the dispersal in the jury's presence is also answered in *Grant* where it was stated at 660 of 368 F.2d:

> " * * * It is no answer to say that it would have prejudiced his case to object in the presence of the jury at the time separation was permitted. Objection could have been made out of the hearing of the jury without the problem of prejudice arising."

Even where there was a specific objection concerning newspaper and radio reports (not present here) the Eighth Circuit recently reached a similar conclusion in Cardarella v. United States, 375 F.2d 222, 227:

> "The jury failed to reach a verdict after two hours of deliberation on the day the case was submitted and was excused until the following morning. None of the defendants made any objection to this procedure, nor had there been a request to confine the jurors during the course of the trial. It was not until the Court convened the next day that any objection was voiced, that solely on the theory newspaper reports published that morning and radio broadcasts concerning the case were prejudicial to the defendants. There was neither a showing nor even an intimation that any juror actually saw the newspaper, heard any of the broadcasts, or was in any way influenced thereby."

Moreover, the Supreme Court has stated in its per curiam opinion in Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250, "The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial." The Court then cites *Holt*, supra, and says, "Generalizations beyond that statement are not profitable, because each case must turn on its special facts."

Here the trial court gave full, explicit and correct instructions to the jurors before allowing them to disperse. Clearly there was no abuse of discretion in this instance.

### IV. *Acceptance of Verdict*

Finally, appellant contends that the trial judge virtually "instructed" the jury to return a verdict it had already reached before its overnight dispersal. The record itself refutes this completely. After the jury had deliberated all morning of the second day the court questioned the foreman about the ability of the jury to reach a verdict and upon being advised that the jury might not be able to agree on each and every count of the multiple count indictment explained that a mistrial could be declared on those counts upon which the jury was unable to agree and gave them additional time to deliberate with the request that the jury report on any count upon which agreement had been made prior to the overnight dispersal. The pertinent colloquy speaks for itself:

"The COURT: Mr. Foreman, have you arrived at a verdict, sir?

The FOREMAN: We have on Counts Five, Seven, and Eight, sir.

The COURT: Counts Five, Seven, and Eight?

The FOREMAN: Yes, sir.

The COURT: Can you state to the court at this time whether or not you have arrived at those verdicts yesterday afternoon before your dispersal?

The FOREMAN: Yes, sir.

The COURT: All right, sir, will you present the verdict to the Marshal?

(Whereupon, the verdict of the jury was delivered to the court.)

The COURT: All right, sir, will the Clerk publish the verdict."

There is patently no merit in appellant's adjunctive contention here that the trial court thereby had no authority to accept a "partial verdict." Each count of an indictment is an entity, and each verdict rendered on each count is an entity. See Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932); United States v. Russo, 335 F.2d 299, 301, (7th Cir. 1964), cert. den. 379 U.S. 962, 85 S.Ct. 651, 13 L.Ed.2d 556 (1965).

The judgment of conviction on Counts Five, Seven, and Eight are

Affirmed.