**UNITED STATES of America**

v.

**Michael PIANCONE, Appellant, et al.**

No. 74–1663.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Nov. 21, 1974.

Decided Dec. 30, 1974.

Ronald J. Riccio, Robinson, Wayne & Greenberg, Newark, N. J., for appellant.

Jonathan L. Goldstein, John J. Barry, U. S. Attys., Newark, N. J., for appellee; William T. Pizzi, Asst. U. S. Atty., on the brief.

Before ADAMS, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The day has long passed when jurors were sent to deliberate upon their verdict and were "kept without meat, drink, fire or candle," until they reached a verdict.[1] This case involves a related question in a more modern context, and that is whether jurors in a criminal case may be permitted to return to their homes overnight during the period of their deliberations. On the facts of this case, we hold that the trial judge did not abuse his discretion when he permitted the jury to disperse after their deliberations had begun.

Defendant was convicted of conspiracy and defrauding the United States by impeding the administration of the Immigration and Naturalization Laws. 18 U.S.C. §§ 371, 1546. He and three others had been indicted for arranging the performance of a sham marriage so that an alien might be given permanent resident status in the United States. The testimony began on February 7, 1974, and the case was submitted to the jury about noon on Tuesday, February 12, 1974. After the jurors had deliberated

1. III, W. Blackstone, Commentaries 375. Apparently, the practice began during the reign of Edward the First (1272–1306), see Crabb History of English Law 287 (1829), and was ended by the Jurors Act of 1870. It was also the practice in early times that, if a jury had not reached a verdict by the time the court had ended its term in a particular town, the jurors were taken by cart to the next town where the court was scheduled to sit.

for about four hours, they sent a note to the trial judge advising that an urgent matter had arisen with one of their number.[2] Counsel and the jury were then summoned to the courtroom and the trial judge excused the jury for the day. They were advised also that because of a previous commitment of the judge to be in Washington on the following day, the case would be in recess until Thursday morning. Before allowing the jury to leave the court, the trial judge instructed them:

> "[R]emember your oath not to discuss this case or any matter pertaining to the case with other persons. Be influenced only by the evidence which has been submitted . . . but remember your oath. By all means do not let any other matters influence you other than what has occurred in this courtroom in arriving at your decision."

At 10:00 A.M. on Thursday, February 14, 1974, the jury reconvened and resumed its deliberations. At about 11:20 A.M., just after the jury "knock[ed] with its verdict" but before its return to the courtroom, defense counsel objected to the separation of the jury. This objection was overruled. At 11:45 A.M., the jury returned its verdict of guilty.

The defendant contends that the interruption of the jury in the midst of its deliberations was inherently prejudicial. However, he does not point to any specific prejudice to him or acts of misconduct by any one of the jurors.

Although in older times it was the custom not to permit the separation of either a civil or criminal jury after its deliberation had begun and before its verdict had been rendered, the practice has steadily eroded, particularly in the federal system. In Byrne v. Matczak, 254 F.2d 525 (3d Cir. 1958), this court held that in a proper exercise of discretion, a trial judge in a civil case may permit the separation of jurors after the cause has been submitted to them.

Judge Hastie, in that opinion, carefully reviewed the historical background of jury practice and concluded that ". . . fair new procedures, which tend to facilitate proper fact finding, are allowable, although not traditional." 254 F.2d at 529. He also pointed out that jurors are more likely to reach impartial decisions when they are not exhausted and that the dangers of corruption by outside influences during the deliberative period are not substantially different from those existing during the trial itself.

That same line of reasoning has equal force here. Trial lawyers traditionally have been concerned about whether verdicts have been influenced by such outside pressures as reluctance to stay away from the family home overnight, weariness, transportation problems, or the fear of walking alone on city streets in the late evening on the way to public transportation. A juror's vote should be based on reasoned judgment—not because uneasiness or discomfort has prodded him to an early end to a case. Intellectual conviction, not physical endurance, should be the basis of a juror's decision. As the court said in Tyler v. United States, 397 F.2d 565, 568 (5th Cir. 1968), cert. denied 394 U.S. 917, 89 S.Ct. 1187, 22 L.Ed.2d 450 (1969):

> "There is much to be said for the view that jurors, even as judges, are more likely to perform their duty fairly and correctly when they are not subjected to extended periods of arbitrary and pointless personal confinement."

 The problems of prejudicial publicity, possibility of harassment or approaches to jurors, the presence or absence of suitable quarters, and difficulties with local transportation, court calendars, etc., which might influence the decision to disperse the jury, emphasize factors which are particularly within the competence of the trial judge to evaluate. The trial judge's discretion is necessarily the controlling factor, and we conclude, along with the majority of the

---

2. The record does not disclose the precise nature of the juror's difficulty. It does seem, however, that weather conditions in the area were very bad.

circuits,[3] that he should decide whether the jury should be dispersed. In the case at bar, the trial judge chose to recess the jury while other important judicial business called him from the city. This decision was amply justified by the circumstances, and in it we find no error.[4]

■ Although the instruction given the jury before it dispersed was brief, it was to the point and was adequate under the circumstances since other admonitions had been given earlier in the trial.

■ We think it appropriate to note our approval of the procedure set forth in Byrne v. Matczak, *supra*. In that case, before allowing the jury to separate, the trial judge admonished its members to discuss the case with no one, and advised them that when they reconvened, each juror would be asked whether he had obeyed these instructions. The inquiry was conducted by the judge in open court before the jury resumed its deliberations the following morning.[5] Some trial judges have followed the practice of placing the jurors under oath before beginning the questioning and have included a reference to reading anything about the case or hearing or seeing anything about it on radio or television. While the administration of an oath is not necessary, it is a formality which tends to impress upon the jurors the gravity with which the court views

its admonition and is also reassuring to the litigants. We commend it to the consideration of the trial judges in this circuit.

■ The defendant raised four other points of alleged error, contending that the conviction should be reversed because:

1. there was no substantial evidence to support the verdict;

2. the verdict was devoid of any rational basis;

3. the trial court's failure to charge the jury on the defendant's theory of the case constituted reversible error; and

4. there was improper cross-examination of the defendant by the prosecutor.

These contentions merit little discussion. There is nothing in the record which indicates that the jury based its verdict on facts other than those properly before it. There is no evidence that it acted erroneously or irrationally in finding against the defendant, and the fact that guilty verdicts were not returned against some of the other defendants is no basis for disturbing the judgment. We find no error in the charge and no erroneous trial rulings which would justify the grant of a new trial.

Accordingly, we reject the defendant's contentions, and the judgment of the district court will be affirmed.

3. *Accord,* United States v. Siragusa, 450 F.2d 592 (2d Cir. 1971); Bratcher v. United States, 149 F.2d 742 (4th Cir.), cert. denied 325 U.S. 885, 65 S.Ct. 1580, 89 L.Ed. 2000 (1945); Tyler v. United States, 397 F.2d 565 (5th Cir.), cert. denied 394 U.S. 917, 89 S.Ct. 1187, 22 L.Ed.2d 450 (1968); Blackmon v. United States, 474 F.2d 1125 (6th Cir.), cert. denied 414 U.S. 912, 94 S.Ct. 252, 38 L.Ed.2d 150 (1973); Cardarella v. United States, 375 F.2d 222 (8th Cir. 1967); Sullivan v. United States,

414 F.2d 714 (9th Cir. 1969); United States v. Weiss, 431 F.2d 1402 (10th Cir. 1970). *Contra,* United States v. D'Antonio, 342 F.2d 667 (7th Cir. 1965). *See also* Devitt & Blackmar, Federal Jury Practice and Instructions § 5.09.

4. Since the jury had not been sequestered during the trial, we do not reach the problem presented by that situation.

5. Byrne v. Matczak, 154 F.Supp. 881, 883 (E.D.Pa.1957).