# STATE OF MARYLAND *v.* AARON PHILIP MAGWOOD

[No. 118, September Term, 1980.]

*Decided July 2, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Diane G. Goldsmith, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*Gary W. Christopher, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

At common law, jurors were "prisoners of the court ... kept together without meat, drink, fire or candle till they [were] agreed."[1] Fortunately for those chosen citizens, modern jury service is less onerous — how much so being the issue in this criminal cause. At the instance of the State, we here review the judgment of the Court of Special Appeals in *Magwood v. State,* 46 Md. App. 668, 420 A.2d 1253 (1980), reversing the jury conviction of respondent Aaron Magwood for distribution of cocaine. In essence, the intermediate appellate court ruled that, absent an emergency or a personal waiver by the defendant, no jury may be separated after a criminal case has been submitted to it for decision. We reverse.

At respondent's trial in the Circuit Court for Montgomery County (Cahoon, J.), the judge called the attorneys to the bench after the jury had been instructed with regard to the law, but before it began deliberating. There, the following colloquy took place:

> THE COURT: Would there be any disagreement if I advise the jury that they should proceed with their deliberations themselves and that if they conclude that they need a rest for dinner, that it can be made available to them, and if they conclude the dinner and are unable to arrive at a verdict tonight, that they can be recessed until tomorrow, and they would not be sequestered?
>
> MR. LOHM [defense counsel]: I have no objection.
>
> MR. BINSTOCK [assistant state's attorney]: Well, I have no objection to the first part, but the second

---

1. 2 *Hale's Pleas of the Crown,* p. 296. Lord Chief Justice Hale continued: "If they agreed not before the departure of the justices of gaol — delivery into another county the sheriff must send them along in carts, and the judge may take and record their verdict in a foreign county." *Id.*

part, I don't want to encourage them to think that they can at 7:00 o'clock say they are going to come back tomorrow when it is more appropriate for a time later on when we determine they are unable to reach a verdict.

THE COURT: My problem with that . . . is that these people were in the panel sometime after 3:00 o'clock, and they have had no opportunity to communicate with their homes or anything like that, and if they get in there and decide they are unable to arrive at a verdict today, and you know it is going to be protracted and prolonged, that if there is any question in their minds, I want them to know they can ask leave of the Court to rest tonight.

MR. LOHM: I agree with that.

MR. BINSTOCK: I have no objection under the circumstances.

Then, in open court in the presence of the accused, the judge informed the jurors that arrangements could be made for them to have dinner together at a nearby restaurant. The court continued:

I would [also] want you to know that if you believe that you are unable to arrive at a verdict tonight and wish to make a request of the Court, *I will consider such a request* for a recess overnight, and then you would have to return here tomorrow to finish your deliberations. [Emphasis added.]

Neither the accused nor his counsel objected to these remarks and the jury retired to begin deliberating at 6:55 p.m. When, at 9:50 p.m., the jurors informed the court that quick agreement was unlikely and they wished to be excused for the night, the judge so advised the parties in open court and announced that he intended to grant the request. Again, no objection was heard, although defense counsel did request an instruction that the jury not pursue any unresolved questions they may have by consulting sources at home. This was agreed to and, when the jurors returned to the courtroom,

the judge admonished them not to discuss the case during their overnight separation or to consult outside references. Neither the defendant nor his counsel posed an objection, and the jurors dispersed for the night. Upon reassembling the next morning, and after deliberating for a little more than an hour, the jury informed the court that it was in agreement on the first count, distributing cocaine, but "hung" as to the second count, conspiracy. As a consequence, the judge declared a mistrial on the conspiracy allegation and received the jury's guilty verdict, again without objection, on the distribution charge. The Court of Special Appeals reversed this conviction and we granted certiorari.

In its reported opinion, the intermediate appellate court concluded that,

> absent an emergency, no jury in a criminal case may be separated, after the issue has been submitted to them, and before verdict, unless the record affirmatively shows that the accused has personally waived the right to require the jury to be sequestered during its deliberative process. [46 Md. App. at 678, 420 A.2d at 1259 (footnote omitted).]

From this premise, the court held that since Magwood was not present at the bench conference where his counsel initially consented to the jury's overnight separation interrupting deliberations, there was no personal waiver by the defendant of his right to require the jury to remain together during that period and reversal was required. *Id.* at 675, 420 A.2d at 1257. Moreover, reasoned the court, "[w]hile it may be argued that the appellant was present [when the trial judge announced his intention to allow the jury to separate overnight,] and thereby waived his right to object to the separation . . ., the happenings in the instant case are too fundamental to the rights of a defendant . . . to infer waiver [either by counsel's consent out of his presence or] by silence." *Id.* at 678, 420 A.2d at 1259. We do not agree.

Our analysis begins with the observation that the facts of this case make it unnecessary to decide whether a defendant

is entitled to be present when the decision to allow the jury to separate is made, and, consequently, we here intimate no view with respect to this question. *See Hughes v. State,* 288 Md. 216, 421 A.2d 69 (1980). This is so because, although Magwood did not attend the bench conference where his attorney first expressed his assent to the jury separation, the defendant was present when the intent to allow the jurors to part overnight was expressed several times in open court before the jury was actually sent home. Magwood was in attendance when the court informed the jury concerning the proposed recess, when the court announced that the jury wished to be excused for the night, and, after the jurors entered the courtroom, when the judge admonished and sent them home for the evening. In our view, Magwood being in attendance when the judge announced several times his intention to allow the jury to separate satisfied the presence requirement, if one exists, and sufficed to ensure that if the defendant had any real objection to the proposal, he could have so informed his counsel or voiced it himself prior to the separation; thus, assuming that this is a stage of the trial requiring the defendant's presence, we perceive no violation of that right here. Rather, given the silence of Magwood and his counsel in the face of these later opportunities to object to the breach of jury sequestration, the question is whether the right to a separated jury, if it exists, can be waived in this manner.[2] As we conclude that it can, it becomes unnecessary to decide whether, and if so under what circumstances, a criminal defendant possesses a right to a secluded jury after the commencement of deliberations. We note, however, that Maryland Code (1974, 1980 Repl. Vol.), Courts and Judicial Proceedings Article, § 8-304, places the analogous issue of jury separation prior to the submission of the case to the

---

**2.** Both parties acknowledge that this right can be waived, and we agree, for there are few, if any instances where a criminal defendant is prohibited from surrendering his rights, be they constitutional or otherwise, see Logan v. State, 289 Md. 460, 469-74, 425 A.2d 632, 637-39 (1981). Since the accused may waive his right to a jury entirely, Countess v. State, 286 Md. 444, 408 A.2d 1302 (1979), he may ordinarily waive any pendant rights governing the jury's conduct throughout the trial. *Cf.,* State v. McKay, 280 Md. 558, 375 A.2d 228 (1977) (unanimous verdict waivable).

panel in the discretion of the court. *See, e.g., Veney v. Warden,* 259 Md. 437, 442, 271 A.2d 133, 137 (1970); *Midgett v. State,* 223 Md. 282, 294-99, 164 A.2d 526, 633-35 (1960), *cert. denied,* 365 U.S. 853 (1961).[3]

In explaining why the asserted right to a sequestered jury can be waived by a defendant through his failure to object, we note that the term waiver "is ambiguous, susceptible to numerous meanings depending upon the particular context in which it is used." *Curtis v. State,* 284 Md. 132, 141, 395 A.2d 464, 469 (1978). In *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), for example, the United States Supreme Court, in deciding whether a defendant relinquished his sixth amendment right to counsel, set forth the generally applicable standard for waiver of what has become known as "fundamental" constitutional rights:

> It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' *A waiver is ordinarily an intelligent relinquishment or abandonment of a known right or privilege.* [Emphasis added.]

---

**3.** Courts around the nation are split on the issue of whether the judge possesses discretion to allow separation of a criminal cause jury after the case has been submitted to it for decision. See Annot., 72 A.L.R.3d 248; 23A C.J.S. Criminal Law § 1358. Maryland Code (1974, 1980 Repl. Vol.), Courts and Judicial Proceedings Article, § 8-304, provides that:

> The jurors sworn to try a criminal action may, at any time before the submission of the case to the jury, in the discretion of the court, be permitted to separate or may be kept in charge of proper officers.

Respondent Magwood urges that section 8-304, by permitting jury separation prior to submission, implicitly forbids the separation at any time afterwards. This view is not without support. See People v. Chain, 22 Cal. App. 3d 493, 99 Cal. Rptr. 472, 475 (1971); People v. Werwee, 112 Cal. App. 2d 494, 246 P.2d 704, 705-06 (1952) (interpreting a similar California statute). In counterpoint, Kennard v. State, 177 Md. 549, 557, 10 A.2d 710, 713 (1940), decided without reference to the substantially identical predecessor to section 8-304 applicable at that time, held that in the trial of misdemeanors, the "mere separation of the jury with the consent of the court after the case has been submitted to them and before their verdict is returned will not of and by itself vitiate the verdict if it is clear . . . that the defendant was not prejudiced. . . ."

On the other hand, in *Schneckloth v. Bustamonte,* 412 U.S. 218, 235, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973), where the accused was held to have consented to a search even though he was not informed of his right to require a warrant, the High Court declared that "[o]ur cases do not reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional protection." Likewise, in *Estelle v. Williams,* 425 U.S. 501, 512, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976), the Supreme Court held that, although the defendant has a constitutional right not to be tried before a jury in identifiable prison clothes, "the failure to make an objection to the court . . . for whatever reason, is sufficient" to preclude assertion of the right on appeal. In determining that there is no duty on the trial court to inquire of the defendant "whether he was deliberately going to trial in jail clothes," the Court declared that

> [t]o impose this requirement suggests that the trial judge operates under the same burden here as he would in the situation in *Johnson v. Zerbst,* [*supra*], where the issue concerned whether the accused willingly stood trial without the benefit of counsel. Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system. [425 U.S. at 512.]

In attempting to verbalize the dichotomy between the fundamental constitutional rights that can only be waived by the defendant personally and the vast majority of rights that are relinquished through inaction or by consent of counsel, the Supreme Court in *Schneckloth* declared that "[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant

in order to preserve a fair trial." 412 U.S. at 237.[4] Speaking for this Court in *Curtis v. State, supra,* Judge Eldridge cogently reviewed the authorities on waiver and summarized them as follows:

> It is clear . . . that whether one is precluded from asserting a constitutional right because of what may have occurred previously, even though the failure was not "intelligent and knowing," depends upon the nature of the right and the surrounding circumstances. A defendant may forego a broad spectrum of rights which are deemed to fall within the category of tactical decisions by counsel or involve procedural defaults.
>
> In the broadest sense of the word, any tactical decision by counsel, inaction by counsel, or procedural default, could be described as a "waiver." For example, an attorney must make numerous decisions in the course of a trial. Whenever he makes one, choosing to take or forego a particular action, the alternate choice could be said to have been waived. However, with regard to constitutional rights in a criminal proceeding, in a much narrower sense the term "waiver" could be said to connote the intelligent and knowing relinquishment of certain basic constitutional rights under circumstances where the courts have held that only such intelligent and knowing action will bind the defendant. [284 Md. at 147-48, 395 A.2d at 473.]

It thus appears that whether a defendant must be personally apprised of a particular right before he can be deemed to have relinquished it depends upon how basic that right is to a fair trial. Most decisions as to trial tactics, strategy and procedural maneuvers rest with the defendant's attorney, for, to require an intelligent and knowing waiver of every

---

4. Certain protections that ensure a fair trial, such as the right to counsel, attach at the pretrial stage. Those guaranties, however, "are similarly designed to protect the fairness of the trial itself." Schneckloth v. Bustamonte, 412 U.S. 218, 238, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).

trial right of whatever kind would, in our view, adversely alter the role of the trial judge and counsel and disrupt the orderly workings of a criminal trial already designed to ensure justice for the accused. *Curtis v. State, supra,* 284 Md. at 149, 395 A.2d at 474 (case interpreting the reach of "intelligent and knowing" waiver of rights as statutory bar to post conviction relief under Md. Code (1957, 1976 Repl. Vol.), Art. 27, § 645A). On the other hand, certain trial rights of constitutional origin, whether federal or State, cannot be relinquished by counsel but, to be effective, must be directly and personally waived by the defendant.[5] For instance, the accused when pleading guilty in open court must personally waive his right to trial of the general issue. *State v. Priet,* 289 Md. 267, 287-90, 424 A.2d 349, 359-60 (1981); *Davis v. State,* 278 Md. 103, 108, 361 A.2d 113, 121 (1976). The defendant likewise must personally waive the right to be present at each stage of the trial, *Bunch v. State,* 281 Md. 680, 688, 381 A.2d 1142, 1146 (1977). Of course, only the accused may waive his right to counsel, *Thompson v. State,* 284 Md. 113, 122-23, 394 A.2d 1190, 1196 (1978); *State v. Bryan,* 284 Md. 152, 157-58, 395 A.2d 475, 477-78 (1978), the right to confront witnesses against him, *State v. Collins,* 265 Md. 70, 79-80, 288 A.2d 163, 168 (1972), and the right to trial by jury, *Countess v. State,* 286 Md. 444, 449-50, 408 A.2d 1302, 1304 (1979). Finally, the accused may waive a unanimous verdict, but only if he "competently and intelligently" relinquishes that right. *State v. McKay,* 280 Md. 558, 572, 375 A.2d 228, 236 (1977).

The parties before this Court, seizing upon the apparently bifurcated approach to the doctrine of waiver, have taken predictably contrary positions as to the relative importance of the right to a sequestered jury during deliberations. The State urges that the assertion or relinquishment of this right to such an isolation of the jury is in the nature of a tactical

---

**5.** This Court, through its rule making power, in particular cases has either reflected or supplemented the federal and State constitutional requirements, or created additional situations in which a knowing waiver is required. *See, e.g.,* Maryland Rules 723 (right to counsel), 724 (right to presence), 731 (guilty and nolo contendere pleas), and 735 (jury trial).

trial decision, which may be waived by the express consent of counsel or the simple failure to note an objection. The defendant, on the other hand, seeks to bring the right at issue into the select group of "fundamental" rights which may only be waived by the accused himself, urging that the right to have a jury sequestered during its deliberative period is nothing less than the right to be tried by an impartial jury, free from outside influences. In resolving this matter in favor of the State, we point out that the ancient common law doctrine prohibiting jury separation is not generally thought to be such an integral part of the right to a jury trial that sequestration has constitutional status. Consequently, the federal courts, perceiving no constitutional issue, have relegated jury separation, whether before or during deliberations, to the discretion of the trial judge, and, absent "an affirmative showing of prejudice and abuse of discretion," the decision will not be questioned. *Cardarella v. United States,* 375 F.2d 222, 228 (8th Cir. 1967), *cert. denied,* 389 U.S. 882 (1967). *See, e.g., United States v. Arciniega,* 574 F.2d 931, 933 (7th Cir. 1978), *cert. denied,* 437 U.S. 908 (1978); *United States v. Piancone,* 506 F.2d 748, 750-51 (3rd Cir. 1974); *Blackmon v. United States,* 474 F.2d 1125, 1126 (6th Cir. 1973), *cert. denied,* 414 U.S. 912 (1973); *United States v. Siragusa,* 450 F.2d 592, 595 (2nd Cir. 1971), *cert. denied,* 405 U.S. 974 (1972); *Sullivan v. United States,* 414 F.2d 714, 715 (9th Cir. 1969); *Tyler v. United States,* 397 F.2d 565, 569 (5th Cir. 1968), *cert. denied,* 394 U.S. 917 (1969); *Hines v. United States,* 365 F.2d 649, 651 (10th Cir. 1966); *Bratcher v. United States,* 149 F.2d 742, 746 (4th Cir. 1945), *cert. denied,* 325 U.S. 885 (1945); *Brown v. United States,* 99 F.2d 131, 132 (D.C. Cir. 1938), *cert. denied,* 305 U.S. 562 (1938). If counsel consents to the separation or fails specifically to object to it, the decision ordinarily will not be reviewed at all. See *United States v. Arciniega, supra; Grant v. United States,* 368 F.2d 658, 660 (5th Cir. 1966); *Hines v. United States, supra; Stern v. United States,* 219 F.2d 263, 265 (4th Cir. 1955). We are persuaded by the authorities already cited as well as the reasoning of these federal decisions that the right to a

sequestered jury likewise does not inhere in the Article 5 guaranty of trial by jury contained in the Maryland Declaration of Rights.

Recognizing that the issue of jury separation *per se* poses no State or federal constitutional problem, Magwood urges that the requirement of a personal waiver "does not turn on the constitutional status, *vel non,* of the right;" rather, the requirement of sequestration, his argument goes, is essential to maintain the integrity of the defendant's right to a jury trial by ensuring that the deliberative process remains free from improper influence.[6] The protection against the evil of the jurors being influenced by outside contacts is ordinarily provided by an appropriate admonition from the judge and presumed adherence thereto by a jury impressed with their solemn duty. *See Hunter v. State,* 193 Md. 596, 604, 69 A.2d 505, 508 (1949); *Cohen v. State,* 173 Md. 216, 232, 195 A. 532, 539 (1937), *cert. denied,* 303 U.S. 660 (1938); *see also Tyler v. United States, supra,* 397 F.2d at 568-70; *Wilhelm v. State,* 272 Md. 404, 326 A.2d 707 (1974). Here, prior to authorizing separation of the jurors for the night, the judge, in the presence of the accused and his counsel, admonished them not to discuss the case; he even included, at the specific request of defendant's counsel, an admonition not to consult outside sources for information that the jurors had requested of the court during deliberations. The record does not indicate, nor has Magwood suggested, facts which demonstrate any violation of this court instruction. If a breach of the prohibition occurred, the remedy would be to

---

**6.** The original aim of the common law rule was set forth by this Court in Kennard v. State, 177 Md. 549, 554, 10 A.2d 710, 712 (1940):

> The purpose of the rule was first to prevent contamination of the jury by extraneous communications and improper influences, and second to coerce a verdict by withholding from the jurors their accustomed comforts and conveniences with the idea of making their confinement so unpleasant and irksome that they would be willing to end it as soon as possible.

Magwood agrees with the State that the coercive aspect of the doctrine is an anachronism which should be rejected by modern courts. Nevertheless, asserts the accused, the rule remains fundamentally important to the extent that it safeguards the integrity of the jury.

attack the jury verdict as improperly reached, and this remedy would exist quite apart from the defendant's waiver of any right to a sequestered jury.

Moreover, while the defendant views the sequestered jury during deliberations as one free of contamination, there are those who perceive some dangers to the integrity of the verdict when the jurors remain sequestered throughout a prolonged deliberative period. Protracted discussion with resulting fatigue, according to this view, may result in a verdict, but not necessarily a fair or accurate one. As the court in *United States v. Piancone, supra,* 506 F.2d at 750, noted:

> Trial lawyers traditionally have been concerned about whether verdicts have been influenced by such outside pressures as reluctance to stay away from the family home overnight, weariness, transportation problems, or the fear of walking alone on city streets in the late evening on the way to public transportation. A juror's vote should be based on reasoned judgment — not because uneasiness or discomfort has prodded him to an early end to a case. Intellectual conviction, not physical endurance, should be the basis of a juror's decision. As the court said in *Tyler v. United States,* [*supra* at 568] "there is much to be said for the view that jurors, even as judges, are more likely to perform their duty fairly and correctly when they are not subjected to extended periods of arbitrary and pointless personal confinement."

Consequently, given the non-constitutional nature of the specific right at issue, we fail to see why, particularly where the usual cautionary instruction is furnished the panel, the right to a sequestered jury during the deliberative period (if its exists) should be elevated to an exalted status requiring that it be relinquished only through a knowing waiver by the accused.

An examination of two of our prior decisions bolsters this conclusion. In *Kennard v. State,* 177 Md. 549, 10 A.2d 710

(1940), it was held that in the trial of a misdemeanor, the mere separation of the jury after the cause has been submitted to it will not of itself vitiate the verdict, absent prejudice to the accused. See note 3, *supra.* Implicit in that holding was the notion that the right to protest jury separation during deliberations could be waived by failure to enter an appropriate objection. Addressing the "highly technical" question whether the accused had properly preserved the issue of waiver of separation for appellate review, this Court in *Kennard* noted that the

> [d]efendant objected to the return of the verdict as soon as he learned of the separation, and before the verdict was returned, and he thereafter made it the basis of a motion in arrest of judgment. Conceding that the motion in arrest was not appropriate, the written objection of the defendant, taken in connection with the certificate of the trial judge, was sufficient to present the question. [177 Md. at 558, 10 A.2d at 714.]

We agree with the State that if the right to a sequestered jury during deliberations was considered in *Kennard* to be of that ilk which requires a personal waiver by the accused, then this Court undoubtedly would have so indicated. Rather, the focus in *Kennard* was on whether the defendant had been prejudiced by the jury separation, and not on the magnitude of the right to a sequestered jury during deliberations. As we noted in a subsequent decision, "[t]his Court [in *Kennard*] viewed the matter as a question of prejudice *vel non,* and not as a matter of denial of a fundamental right. . . ." That decision, *Midgett v. State,* 223 Md. 282, 296, 164 A.2d 526, 534 (1960), *cert. denied,* 365 U.S. 853 (1961), interpreting the predecessor to section 8-304 of the Courts Article (Code (1974, 1980 Repl. Vol.)), which specifically provided that separation of the jury prior to deliberations rests in the discretion of the court, sheds further light on the matters we now consider. In *Midgett,* the defendant failed to object when, during trial, the jury was separated without proper admonition. Declaring that "[w]e think [the absence

or lack of adequate caution] does not present an error which is so fundamental that it could not . . . be waived . . .," this Court held the defendant, by failing to protest the separation, "waived any objection to the absence or insufficiency of admonition to the jury." 223 Md. at 296, 299, 164 A.2d at 533-34, 535. We recognized in *Kennard* that there are certain differences between separating the jury during the evidentiary stage of trial and during deliberations. However, the two separations are sufficiently analogous that it would breach consistency to hold jury separation during deliberations so fundamental that it can only be waived by the defendant knowingly and personally, while reposing separation prior to that time in the discretion of the trial judge. As noted in dissent in *United States v. D'Antonio,* 342 F.2d 667 (7th Cir. 1965), which was later embraced by the 7th Circuit bench when overruling that case in *United States v. Arciniega, supra,* 574 F.2d 931, 933, and n.2:

> [S]eparation of the jury during deliberation of its verdict and separation during the course of the trial are not logically distinguishable. If jurors are apt to be influenced by outside contacts during periods when they are separated while deliberating, they are equally apt to be influenced by those contacts during the trial. The protection against such evil ordinarily is provided by an admonition from the judge and by an adherence to the admonition by conscientious jurors. [*United States v. D'Antonio, supra* at 672.]

Consequently, we hold that the right to a sequestered jury during the deliberative stage of trial, which for purposes of this decision we have assumed exists, is not so fundamental that it can only be waived by the defendant personally; at least where, as here, the defendant is present, either the consent of counsel to the separation after submission of the case to the jury or counsel's failure to pose timely objection to the dispersal normally will constitute a waiver of any such right. This view is in accord with the substantial majority of jurisdictions which have considered the question. *E.g.,*

■■■■■■■

*Smith v. State,* 56 Ala. App. 379, 321 So. 2d 719, 722 (1975): *Smith v. State,* 194 Ark. 264, 106 S.W.2d 1019, 1022 (1937); *People v. Harris,* 73 Cal. App. 3d 76, 140 Cal Reptr. 697, 701 (1977); *Nelson v. U.S.,* 378 A.2d 657, 660 (D.C. App. 1977); *Walker v. State,* 71 Ga. App. 38, 29 S.E.2d 819, 819-20 (1944); *Arnett v. Commonwealth,* 470 S.W.2d 834, 838 (Ky. 1971); *State v. Roberts,* 272 S.W.2d 190, 192 (Mo. 1954); *People v. Silvernail,* 55 A.D.2d 72, 389 N.Y.S.2d 641, 643 (1976); *State v. Williams,* 39 Ohio St. 2d 20, 313 N.E.2d 859, 862-63 (1974); *Hobson v. State,* 277 P.2d 695, 700-02 (Okla. Crim. 1954); *Green v. State,* 510 S.W.2d 919, 921 (Tex. Crim. 1974). *See in addition* C. Torcia, *Wharton's Criminal Procedure* § 553, p. 54-55 (12th ed. 1976).

> *Judgment of the Court of Special Appeals reversed and cause remanded to that court with instructions to affirm the judgment embodying the conviction and sentence of the Circuit Court for Montgomery County.*
> *Costs to be paid by respondent.*