ALTENBERND, Judge.
The defendant appeals his convictions of burglary, kidnapping, aggravated battery and four counts of sexual battery. We are required to reverse these convictions and remand for a new trial because the jury was permitted to separate overnight during deliberations. Taylor v. State, 498 So.2d 943 (Fla.1986). Although there is nothing in this record to suggest that the night’s rest affected the jury’s verdict in any fashion, Taylor does not permit us to conduct a harmless error analysis. Because the Florida Supreme Court has decided that separation during deliberations may sometimes result in a harmful influence on the jury, undetectable by either the trial court or the appellate court, this error is regarded as per se error in order to protect the defendant’s constitutional right to trial by jury. Taylor; Brooks v. State, 507 So.2d 606 (Fla.1987).
The defendant was charged with burglary, kidnapping, aggravated battery and four counts of sexual battery. All of the crimes were committed on May 15, 1987, at the home of a victim who knew the defendant well. The case was presented to a jury during a five-day trial in March 1988.
In the early afternoon of the fourth day of trial, the attorneys presented their closing arguments. At approximately 3:30 p.m., prior to reading the jury instructions, the trial judge stated to both attorneys:
I’m going to instruct [the jurors]. It’s going to take a while. I’m deliberating about the possibility of sending them home for the night at a reasonable hour and bringpng] them back tomorrow. If there are some legal reasons why I shouldn’t do that, you can do some research.
Neither attorney objected at that time or stated any reservations about the trial judge’s intentions. The trial court then instructed the jurors, and they began deliberations.
At 4:36 p.m., the jury sent a note to the trial judge, requesting to listen again to a recorded police interview with the defendant. As a result, the trial judge stated to the attorneys: “What I will do, unless you have case law, is play the tape back and turn them loose for the night with the stern admonition that they not discuss the case or the you [sic] other stuff. What I’ll do then is get them back in here tomorrow.” Defense counsel responded: “I object to your sending them home this evening. I don’t have case law with me, but I don’t think it’s proper.”
Since defense counsel was not prepared with any case law, the trial judge turned to the prosecutor and asked whether he knew of any technical reasons preventing the jurors from going home for the evening. The prosecutor stated that he knew of no such reasons. The trial judge recognized that the jurors had been out for only an hour, but stated that he did not want them to make a hurried decision or to be exhausted during deliberations. Thus, he *1159 brought the jurors into the courtroom and informed them of his intentions to send them home for the evening. Before letting the jurors go, however, he carefully questioned the jury and instructed them not to read or listen to any media accounts of the trial and not to discuss the trial with anyone.[1]
Before the jurors were permitted to continue their deliberations on the following morning, the trial judge performed a voir dire to assure that the jurors had not read or heard anything about the case that might taint their ability to render a fair verdict.[2] At that time, defense counsel restated her objection to the overnight separation, but again had no case law on the issue. Although the trial court gave both parties an opportunity to question the jurors, defense counsel did not make any further inquiry. The trial court then replayed the tape and allowed the jurors to resume deliberations. The jurors found the defendant guilty of all seven charges *1160 and the trial court sentenced him to life imprisonment.
In December 1986, more than a year before this trial, the Florida Supreme Court answered the following certified question in the affirmative:
After submission of the cause to the jury for deliberations in the trial of a noncapi-tal case, is it reversible error per se for a trial court to authorize the jury to separate overnight, or for some other definite time fixed by the court, and then reassemble and continue its consideration of a verdict?
Taylor v. State, 498 So.2d 943 (Fla.1986). See also Brooks v. State, 507 So.2d 606 (Fla.1987). Accordingly, we have no option but to remand this case for a new trial.
It has been suggested that we are permitted to conduct a harmless error analysis because the express holding in Taylor did not announce a rule of per se reversible error. Granted, the supreme court stated: “We therefore hold that it is reversible error for a trial court in a noncapital felony case to allow a jury to separate after deliberations have begun.” Although this holding does not describe the error as “per se reversible,” a review of the Taylor and Brooks opinions in their entirety leads us to conclude that this suggestion is misplaced.
First, the precise language of the certified question in Taylor clearly asks whether it is “reversible error per se” for a trial court to permit a jury to separate overnight once it has begun its deliberations. The supreme court answered the question in the affirmative without suggesting that it disagreed with the portion of the question concerning per se error. The supreme court rejected the district court’s holding that “it is not reversible error as a matter of law for a trial judge to permit a jury to separate, after deliberations have begun in a noncapital case.” Taylor, 498 So.2d at 944.
Second, the substance of the Taylor opinion indicates an intention to extend the “strict rule” in capital cases to noncapital cases. In Livingston v. State, 458 So.2d 235, 239 (Fla.1984), the court held “that in a capital case, the jury must be sequestered until it reaches a verdict or is discharged.” It expressly recognized that it was applying a “strict rule” in that case, but reasoned that such a rule was necessary “to safe-guard the defendant’s right to a trial by an impartial jury,” a right which is “fundamental” and “guaranteed by the sixth amendment to the United States Constitution and article I, section 16 of the Florida Constitution.” Livingston, 458 So.2d at 238. In Taylor, the court reiterated the Livingston holding when it extended the rule of juror sequestration to noncapital cases.
Our interpretation of the Taylor rule as announcing a rule of per se reversible error appears to be consistent with the interpretations of the district courts of this state. Thompson v. State, 503 So.2d 1354 (Fla. 2d DCA 1987); Junco v. State, 510 So.2d 909 (Fla. 3d DCA), review denied, 518 So.2d 1276 (Fla.1987); Wiley v. State, 508 So.2d 1336 (Fla. 1st DCA 1987); Printempts v. State, 505 So.2d 28 (Fla. 4th DCA 1987). While we share some of the sentiments expressed by Judge Nimmons in his concurrence to Wiley, we are bound to apply the supreme court’s per se rule.
We note that this rule of per se reversible error is apparently not essential for the protection of a defendant’s sixth amendment rights, because the rule of sequestration is an issue of trial court discretion in federal courts. Tyler v. United States, 397 F.2d 565 (5th Cir.1968), cert. denied, 394 U.S. 917, 89 S.Ct. 1187, 22 L.Ed.2d 450 (1969); United States v. Martino, 648 F.2d 367, 391 (5th Cir.1981), cert. denied, 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982); Annotation, Propriety and Prejudicial Effect of Court-Authorized Separation of Jury in Criminal Cases, 4 A.L.R.Fed. 310, § 5 (1970); 2 C. Wright, Federal Practice and Procedure § 389, n. 13 (1982). Although some other states do not use a rule of per se error concerning the sequestration of jurors during deliberations in noncapital cases, it was certainly within the province of the supreme court to provide that protection under article I, section 16, of the Florida Constitution.
*1161 Had we the ability to review the merits of this case, we do not doubt that we would affirm the defendant’s convictions. Without elaborating, the occurrence of the sexual offenses is essentially undisputed and the evidence concerning identity is great. The trial judge’s admonitions to the jurors and their affirmative responses to his questions, both before and after the night’s rest, indicate no harmful influence. Defense counsel has never asserted a reason to believe that any juror was adversely affected by the break. When given the opportunity to voir dire the jurors, defense counsel did not ask a single question. “Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury’s conduct.” Fairmont Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 439, 445 (1933). By allowing the jurors to return home for the night in this case, it appears that the trial judge was actually attempting to “keep the attention of the jurors properly focused and concentrated on their deliberations.” Livingston, 458 So.2d at 239.
It is possible that we have misinterpreted Taylor. We note, for example, that Taylor does not discuss the extensive analysis of per se reversible error by Chief Justice Shaw in State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Under that analysis, there is an argument that constitutional reasons do not exist in this type of case to override the statutory mandate requiring affirmance in the absence of demonstrated harmful error. § 924.33, Fla.Stat. (1989). Certainly, allowing the jurors to go home for rest during deliberations is not the type of error which “will always result in a finding that the error is harmful.” DiGuilio, 491 So.2d at 1135. See also Rushen v. Spain, 464 U.S. 114, 124 n. 3, 104 S.Ct. 453, 458 n. 3, 78 L.Ed.2d 267, 276-77 n. 3 (1984) (Stevens, J., concurring). On the other hand, perhaps a failure to sequester the jurors during deliberations is one of those “structural defects in the constitution of the trial mechanism, which defy analysis by ‘harmless-error’ standards.” Arizona v. Fulminante, — U.S. -, -, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331 (1991). Before regarding this issue as a structural defect, however, it would seem appropriate to require the defendant to suggest a reasonable hypothesis that the break in deliberations resulted in possible harm.
Citing defense counsel’s failure to timely obtain the requested case law and her failure to move for a mistrial on the morning of the continued deliberations, the state vigorously argues that we should affirm the defendant’s convictions on grounds that the error was not preserved or was waived. We conclude that the objections by defense counsel, although unsupported by case law, were sufficient to preserve the issue. Brooks (defense counsel’s request that jury be sequestered is sufficient to preserve issue); Junco. Although the issue of waiver is more enticing, it fails because the record does not demonstrate a knowing and intelligent waiver of this error by either defense counsel or the defendant. We cannot say that the defense agreed, acquiesced or affirmatively consented to the separation. See Pope v. State, 569 So.2d 1241 (Fla.1990); Brookings v. State, 495 So.2d 135 (Fla. 1986).
We are, however, troubled by defense counsel’s statement at the motion for new trial hearing that:
Quite frankly, I can tell you that prior to my making that objection, I consulted with other attorneys and, you know, I had about three minutes before I was called back in here and I knew that it was improper. I did not have the case law with me at that time.
(Emphasis added). Defense counsel did not inform the trial judge during trial that she had consulted other attorneys to confirm her belief that case law prohibited the jurors’ release. Moreover, she did not move for mistrial in the morning when she either knew or surely should have known of the Taylor decision. At that point, however, it appears that she had no incentive to move for a mistrial supported by the controlling case law. By then, she should have known that either the jurors would find her client not guilty on one or more of the charges or *1162 that this court would remand for a new trial. If anyone needed to locate the Taylor case in the morning, it was the prosecutor.
We cannot hide our frustration with the attorneys’ performance at trial concerning this issue. The law had recently changed, and the trial judge expressed his concern that he needed current case law to avoid a possible mistake. Defense counsel may have preserved her objection, but never located the case law which the trial judge specifically requested. The prosecutor informed the trial judge that he knew of no reason why the jurors could not go home, but failed to research this matter to confirm his answer. Both attorneys were well aware of this issue for over an hour before the jury was released and for the entire night before the jurors resumed deliberations. They were given an opportunity and ample time to locate the recent Taylor and Brooks cases, but did not do so. The victim may now be subjected to the emotional ordeal of another trial simply because no one spent a few minutes looking for the controlling case law.
Reversed and remanded.
PATTERSON, J., concurs.
HALL, A.C.J., dissents with opinion.

. The trial transcript contains the following admonitions to the jury:
THE COURT: All right, ladies and gentlemen, I have your question, and the answer is yes, you may listen to the tape again.
Given the hour and given the fact that I do not want you to make a hurried decision, nor do I want you to be exhausted as you approach it, I’m going to do two things:
First, I’m going to send you home for the night, and with some instructions, and, second I’m going to ask you to come back tomorrow morning, where we’ll play the tape, put you back in the room, and you’ll be able to approach this relatively untired and a little more leisurely paced, where you aren't pressured to get it done by a certain time.
That only works if a couple of things happen: One is that you again do not listen to, read or otherwise take cognizance of any newspaper or other media accounts of the trial. And there was a reporter from each paper in today.
To make sure that this is an absolutely clean trial, I would like each of you to tell me you didn’t even read the paper tomorrow. It’s not a requirement. I would just like that.
In any event, under no circumstances can you read any account of this trial. That’s first.
Secondly, that you do not discuss the matter except as you have already stopped right now. You do not discuss the matter with any person between now and tomorrow at 8:15 when you come back.
Do you think that’s possible, by the way?
THE JURORS: (Indicate affirmatively.)
THE COURT: Tomorrow at 8:15, when you come back, that you resist the urge to do anything other than just think about what you know and what you have heard.
You’re now permitted at this stage of the game to begin to form opinions, but it’s very important that the opinions you form be done in context of your discussion with the others. Each of you assist it a different way.
Do not discuss it and resist the urge to form any definite or fixed opinions until you come back with each other.
The other admonishments that I have given you also apply.
Don’t let anybody talk about it in your presence or talk to you. Resist the urge to even think about it.
If you can, get a good night’s rest and come back tomorrow morning.
At that same time, I’ll be able to play the tape.
We’ll have people starting in here about 8:30, so I want to do it fast, and you can have as much time as you need to go about this leisurely.
With that, I will excuse you for the evening with my thanks.

. The trial transcript contains the following voir dire:
THE COURT: Good morning, ladies and gentlemen.
I need to ask you a few questions, having turned you loose overnight. I want to make sure for the State and the defendant that nothing unthwart [sic] occurred, so that you’re back here more or less as clean slates.
First of all, did anyone have anyone attempt to talk to them? Did any of you six have anyone attempt to talk to you about this case? Any reporters call you? Anybody attempt to talk to you about the case?
(Whereupon, the jurors indicated negatively.)
That’s a no from everybody.
All right, did anybody discuss the case with anybody factually or in any way? (Whereupon, the jurors indicated negatively.)
THE COURT: Did anybody read anything about this case overnight?
I didn’t see anything in the paper. (Whereupon, the jurors indicated negatively.)
That’s a no from everybody.
So far, all no’s from everybody.
Let’s see, can each of you assure me now that you have been gone overnight, that you will still keep an open mind with respect to your discussion about these facts and keep an open mind with respect to hearing the other jurors and their positions in the event they differ from you?
(Whereupon, the jurors indicated affirmatively-)
That’s yes. For the record, everybody nods up and down.