438 So.2d 803 (1983)
Gregory Scott ENGLE, Appellant,
v.
STATE of Florida, Appellee.
No. 57708.
Supreme Court of Florida.
September 15, 1983.
Rehearing Denied November 4, 1983.
*806 Michael M. Corin, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant, Gregory Scott Engle, was convicted of the first-degree murder of Eleanor Kathy Tolin and sentenced to death despite a jury recommendation of life imprisonment. He now appeals both the conviction and sentence. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
The facts are set forth in the trial court's findings in support of the death penalty:
At approximately 2:00 A.M. on March 13, 1979, Gregory Scott Engle and Rufus E. Stevens plotted to rob the Majik Market and to remove the attendant in order that she may not be able to identify them. At approximately 4:20 A.M. on March 13, 1979, Kathy Tolin, 5 feet tall, 115 pounds, was confronted by Gregory Scott Engle, in the company of Rufus E. Stevens, with a large pocketknife, at which time she turned over the contents of the cash register to Engle, determined later to be $67.00. She was forcibly removed from the Majik Market and placed in a car owned by Rufus Stevens; at which time she was driven to a secluded wooded area nearby and both men raped her. She was then taken to an area approximately 200 feet deeper into the woods where a rope was placed around her neck and she was strangled. Then the large pocketknife was plunged into her back and her vagina was mutilated by a man's hand or a bottle. Either the rope around her neck or the knife wounds could have killed her. The four-inch tear inside the vagina was inflicted as she was dying. Her body was dragged, face down, into the underbrush almost causing one side of her face to be unrecognizable.
Both defendants returned home around 7:00 A.M., March 13, 1979, and the body of Kathy Tolin was found by two boys around 10:00 A.M. on March 14, 1979.
*807 We address appellant's points on appeal in the order in which they were raised.
Appellant first argues that the excusal of two prospective jurors who voiced objections to the death penalty denied him his right to be tried by an impartial jury drawn from a representative cross-section of the community. He contends that the excusals do not comply with the United States Supreme Court's ruling in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), in which the Court stated:
[A] sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction.
Id. at 522, 88 S.Ct. at 1777. In the footnote to the above, however, the Court added the following caveat:
We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt.

Id. at 522-23 n. 21, 88 S.Ct. at 1777 n. 21.
This Court has likewise held that one who "would vote against death regardless of the facts presented or the instructions given" may properly be excused from service on a jury. Jackson v. State, 366 So.2d 752, 755 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979). We have also approved the excusal of a prospective juror who testified that he "could not return an advisory sentence of death upon the weighing of extenuating and mitigating factors of the crime as required by section 921.141(2), Florida Statutes... ." Witt v. State, 342 So.2d 497, 499 (Fla.), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977).
In light of the foregoing, we find that the exclusions here complained of by appellant were warranted and proper. During voir dire, one of the two jurors excused testified, in part, as follows:
Q. (prosecuting attorney): [C]ould you under any circumstances, regardless of the proof or how strong it is, vote to send the man to the electric chair?
A. I would not vote to send a man to the electric chair.
The same prospective juror was later questioned by the court:
Q. (the court): Would you ever vote to impose the death penalty under any circumstances?
A. At this point, I would say no.
Q. Would you refuse to consider imposition of the death penalty in the case we are now about to try, even if he is found guilty by the jury? Would you refuse to consider the death penalty?
A. Yes.
The second excluded juror testified, in part, as follows:
Q. (the court): If he was convicted of murder in the first degree and the second phase of the proceeding in which the jury would listen to mitigating and aggravating circumstances, would you under those circumstances participate in a vote recommending the death penalty?
A. I would not participate in recommending the death penalty.
Q. By that, you mean you would not vote for the death penalty?
A. I would not vote for the death penalty.
Q. Under no circumstances?
A. No.
Q. No matter what the circumstances were, you would not vote for the death penalty.
A. I don't think I would.
The responses above demonstrate that both of the excused jurors had more *808 than "general objections to the death penalty." Both admitted that they would refuse to vote for the death penalty regardless of the facts or the circumstances, and one who demonstrates an irrevocable commitment to so vote may properly be dismissed. The trial court did not violate the strictures of Witherspoon.
Appellant's second point on appeal is that he was denied his due process and fair trial rights when the trial court allowed the jurors to separate during their deliberations over his guilt and go to their homes for the evening. He claims that the error was compounded by the alleged failure to reconvene the jury in the courtroom the next morning prior to its retiring for further deliberations.
Appellant cites as controlling our decision in Raines v. State, 65 So.2d 558 (Fla. 1953), in which we reversed a conviction because the trial court had recessed the jury and sent it home for the evening one and one-half hours after the start of guilt deliberations. In holding that the error warranted reversal, we noted, in part:
There was no objection raised when the jury was dispersed, nor were counsel consulted. There is no showing in the way of evidence that defendant's rights were prejudiced but trials should not be conducted in a way that defendant has good reason for the belief that he was deprived of fundamental rights. The opportunity was open for tampering with the jury and the temptation to do so was such that we are not convinced that the appellant's trial was conducted with that degree of fairness and security that the bill of rights contemplates. A fifteen hours absence under no restraint whatever leaves too much room to question the bona fides of everything that took place during that time, particularly when one defendant was acquitted and the other was convicted on the same charge and evidence.
Id. at 559-60.
The facts in the case sub judice are, however, distinguishable from those in Raines. Counsel here were consulted; in fact, the record shows that appellant's counsel agreed to the separation. Furthermore, prior to their separation for the evening, the trial judge admonished the jury to neither discuss the case with outsiders, nor read, watch, or listen to any media reports thereon. Unlike in Raines, we are here convinced that appellant's trial was conducted with that degree of fairness and security that the bill of rights contemplates, and do not believe that he has good reason to believe that he was deprived of any fundamental rights.
Rule 3.370(b), Florida Rules of Criminal Procedure, provides that unless a jury has been kept together during trial, the court may, after final submission of the cause, allow the jurors to separate and then reconvene. As the jury here was not sequestered during trial, mere separation did not violate said rule.
Appellant argues, however, that the record shows that the jury did not reconvene in the courtroom before retiring for the second time, as is required by rule 3.370(b). The pertinent portion of the transcript states the following:
Whereupon, at 8:30 o'clock a.m., the jury returned to the jury room to further consider their verdict.
Appellant contends that the lack of any indication in the record of the jury having reconvened proves that such did not occur.
Normal procedure in a trial like appellant's would be for the judge to have assembled and ascertained the presence of all of the jurors the morning after the separation, and then to have allowed them to retire once again. Appellant asks that we assume the unusual and presume that the trial judge did not follow the normal pattern. In the absence of more persuasive evidence than that offered, we decline to do so.
It is just as logical to conclude that the jury did reconvene, or else the court reporter would have had no way of knowing that they retired to the jury room at 8:30 a.m. That, and the absence of any objection by appellant's counsel, casts doubt upon the assertion that the jurors were not reconvened. If such error occurred, counsel *809 should have noted it for the record and lodged an objection.
Appellant also contends, in relation to the separation of the jury, that section 918.06, Florida Statutes (1979), was violated. That section provides, in part:
If the court permits the jurors to separate, it shall admonish them not to view the place where the offense appears to have been committed.
Since the jury was not so admonished immediately prior to its separation during deliberations, the court committed error requiring a new trial, argues appellant.
The jury was, however, admonished not to view the scene of the crime. On the first day of the trial, prior to recessing for the evening, the judge lectured the jury regarding its role, communication with persons outside the court, and the like. Among the instructions that he gave was the following:
You must not visit the scene of the alleged crime. Should that be necessary, we will go as a group under the supervision of the Court.
Appellant contends that the preceding admonition, given three days prior to the separation of the jury during deliberations, was insufficient compliance with the statute.
We do not think, however, that the statute mandates that such an instruction be given every time that the jury separates. The judge not only complied with the letter of the law but, in our opinion, also accomplished its purpose. We are confident that in a trial of as short a duration as this one, the jury is capable of remembering and heeding the judge's admonition not to visit the scene of the alleged crime without the necessity of repeating the same every time that the jury separates.
Appellant's third point on appeal is that the trial court erred by admitting into evidence, over objection, three photographs of the victim. Appellant contends that certain of the photos were unnecessary in that prior testimony had already established that which the photos depicted, that they were enlarged and in color in order to inflame the jury, and that there existed black and white photos taken under the medical examiner's supervision which would have served the same purpose.
The test for the admissibility of photographic evidence is relevance; a relevant photograph is admissible. The photographs were used to corroborate and aid in the description of the testimony of certain witnesses and, as such, were relevant. The color photos appear to have been especially useful in showing the drag marks on the victim's body. It is immaterial that there was no dispute regarding the occurrence of the crime or the cause of death because "[a] defendant cannot, by stipulating as to the identity of a victim and the cause of death, relieve the State of its burden of proof beyond a reasonable doubt." Foster v. State, 369 So.2d 928, 930 (Fla.), cert. denied, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979).
Nor do we find the introduction of color rather than black and white photographs to be error. The state is not limited to the use of black and white photos, and is free to select from among the permissible choices those photographs which it wishes to use. In certain situations color may be the preferable choice, as here where the drag marks on the victim's body were not visible in a black and white photo. We are likewise undisturbed by the size of the photographs, as they were not unreasonably enlarged.
Appellant's fourth point on appeal is that the trial court erred in responding to the jury's question, posed during the guilt deliberation phase of the trial, of whether in order to justify a first degree murder conviction the jury had to be convinced that the defendant killed the victim. The judge answered by reinstructing the jury on murder in the first degree, murder in the second degree, and the law of principals. Appellant, relying on our decisions in Hedges v. State, 172 So.2d 824 (Fla. 1965), and Castor v. State, 365 So.2d 701 (Fla. 1978), contends that the judge ought to have reinstructed *810 the jury on all degrees of homicide, including manslaughter, and should have included instructions on justifiable and excusable homicide. We, however, do not agree.
In Hedges, prior to the jury retiring the judge provided instructions on all degrees of unlawful homicide and on justifiable and excusable homicide. During its deliberations, the jury asked the court to "go over the different degrees that were stated the other day. There is some confusion as to the different charges here." 172 So.2d at 825. The court repeated the instructions on unlawful homicide alone, refusing to reinstruct on justifiable and excusable homicide, and we reversed, observing:
In Tipton we held that the manslaughter statute . .. necessarily requires a definition of excusable homicide as an essential of a complete charge.
... .
[I]n order to supply a complete definition of manslaughter as a degree of unlawful homicide it is necessary to include also a definition of the exclusions. [i.e. justifiable and excusable homicide]
... .
[T]he instant problem arose when the trial judge repeated  at jury request  his instructions on degrees of homicide. It is proper for a judge to limit the repetition to the charges requested. However, the repeated charges should be complete on the subject involved. The giving of a partial instruction fails to inform the jury fully and often leads to undue emphasis on the part given as against the part omitted.
... .
In the instant case when the judge repeated his charges on degrees of homicide he should have included the requested definitions of justifiable and excusable homicide. Failure to do so erroneously left with the jury an incomplete, and, potentially misleading instruction.
172 So.2d at 825-26 (citations omitted).
In the case sub judice, however, the judge was not asked to review the different degrees of homicide. He was asked a question regarding the elements requisite for a first-degree murder conviction, and when the question posed is that narrow and specific, the judge may limit the repetition to the charges requested. The judge here, evidently because the jury was confused regarding the degrees of murder and how active a role is required in order to be held liable therefor, provided reinstructions on first and second-degree murder and on the law of principals. We are of the opinion that the repeated charges were "complete on the subject involved." 172 So.2d at 826.
More on point than Hedges is our decision in Henry v. State, 359 So.2d 864 (Fla. 1978). In Henry, at the conclusion of a murder trial, the jury was instructed on first-degree murder, attempted first-degree murder, second-degree murder, third-degree murder, attempted third-degree murder, manslaughter, justifiable homicide, and excusable homicide.
During its deliberations, the jury in Henry sent the judge a note stating, in part:
We do have a problem understanding the difference in murder in the first degree and murder in the second degree. In other words, can this be clarified?
359 So.2d at 865.
In response to the above, the judge reinstructed the jury on first and second-degree murder. The defendant appealed the resulting concurrent life terms to the district court of appeal, contending that the limited reinstruction was an error and that the trial court should have reinstructed the jury on all degrees of unlawful homicide and on justifiable and excusable homicide. The district court affirmed the trial court, and certified to this Court the following question:
WHETHER A TRIAL COURT MUST REINSTRUCT THE JURY UPON ALL DEGREES OF HOMICIDE AND/OR UPON JUSTIFIABLE AND EXCUSABLE HOMICIDE UPON TIMELY REQUEST THEREFOR WHERE THE COURT REINSTRUCTS UPON FIRST AND SECOND DEGREE MURDER AFTER A REQUEST BY THE JURY TO *811 CLARIFY THE "DIFFERENCE IN MURDER IN THE FIRST DEGREE AND MURDER IN THE SECOND DEGREE"?
359 So.2d at 865-66.
We answered the question in the negative and approved the district court's decision, noting the following regarding limited reinstructions:
In Hysler v. State, 85 Fla. 153, 95 So. 573 (1923), this Court established the principle that it is proper for a judge to limit the repetition of the charges to those specially requested as any additional instruction might needlessly protract the proceedings. We echoed this principle in Hedges v. State, 172 So.2d 824 (Fla. 1965), but added the caveat that the repeated charges should be complete on the subject involved.
... .
We can find no abuse of discretion in limiting reinstruction to a direct response to the jury's specific request. Indeed, to do otherwise might not only create confusion in the minds of the jurors but might give the appearance of placing the trial judge in the role of an interested advocate rather than an impartial arbiter. We also note that requiring the court to repeat all of its original instructions whenever the jury requests additional instructions upon a particular point would be both exhausting and time-consuming to the court, the jury, and the parties. The result might be a jury which is deterred from requesting and a court which is restrained from giving, supplemental instructions to help clarify a particular issue.
359 So.2d at 866-67 (citations omitted).
We then distinguished the situation in Henry from that in Hedges, explaining why limited instructions were sufficient in the former and not in the latter:
[T]he specific holding in Hedges was that where a jury specifically requests reinstruction on the "different degrees" of the charges levied, and, accordingly, the court reinstructs on manslaughter and the other degrees of unlawful homicide, the court is then compelled to reinstruct on excusable and justifiable homicide as a necessary concomitant of manslaughter. The jury in Hedges was given an incomplete instruction with regard to manslaughter. In the instant case, the jury was not reinstructed on manslaughter but was recharged exclusively on first and second degree murder. When the initial jury instruction on manslaughter was given, so were the charges on justifiable and excusable homicide. Consequently, petitioner's reliance upon Hedges v. State, supra, is misplaced.
Petitioner's argument that the jury's understanding of any "unlawful killing" must necessarily depend on its comprehension of "lawful killings" is persuasive. It is obvious that before the defendant can be convicted of any unlawful killing, the jury must conclude that the homicide was not lawful. However, in the case sub judice, it is apparent that the jury had already made that determination by requesting merely a clarification of the "difference" between first and second degree murder. Had they not determined whether the homicide was lawful or unlawful, they would have solicited reinstructions on justifiable and excusable homicide or the other degrees of unlawful homicide, or both. We can contemplate numerous situations where the jury's request does not suggest necessarily that they have already determined whether a homicide has been lawful or unlawful. In those situations, the defendant is entitled to reinstructions on lawful homicide.
359 So.2d at 867-68 (citation and footnotes omitted).
In the case sub judice, as in Henry, the jury's request for clarification was a narrow one, so the court was not compelled to repeat the entire set of instructions initially given. The reinstruction given was proper in view of our rulings in Hedges and Henry.
Appellant's next point on appeal is that he was denied the due process of law guaranteed by the constitutions of Florida and the United States by the submission to the jury of misleading written instructions. *812 The instructions, those in section 2.13(i) of the Florida Standard Jury Instructions in Criminal Cases, Second Edition, instruct the jury on the weight to be given out-of-court statements made by a defendant. The printed instructions contain the words "statement," "admission," and "confession," intending that the applicable term be utilized. When the judge read the above instructions, he, at the request of appellant's counsel, used the word "statement" rather than "admission" or "confession," wherever a choice was given. But, when he gave the jury a copy of the instructions for use during deliberations, he did not in any way delete or cover the alternative words "admission" and "confession" which are printed in parentheses following "statement." Appellant contends that such constituted fundamental, reversible error. We disagree.
The trial court gave, orally, the proper standard jury instruction on the subject. The printed instruction given the jury read the same except for the parenthetical words previously noted. While it might have been preferable for the words in parentheses to have been deleted, we do not think that their presence was so misleading to the jury as to fatally flaw the instructions.
The weight which the instructions direct that an out-of-court statement be given is the same regardless of which of the three words is inserted. The presence of the parenthetical alternatives should not have interfered with the jury's understanding and analysis of the evidence.
Appellant notes that the importance of not using the word "confession" indiscriminately is shown by the caveat, cautioning against such, located at the bottom of the printed instructions. While he is correct, we note that the jury, if it utilized the printed instruction, would likewise have seen that caveat and thus been warned against automatic, unthinking use of the word "confession".
In addition to the foregoing, we note that appellant's trial counsel never requested that the words "admission" and "confession" be deleted from the printed instructions and made no objection when the same were submitted to the jury. In fact, the issue was never raised until the cause was appealed. As appellee points out, "except in the rare cases of fundamental error ... appellate counsel must be bound by the acts of trial counsel." Castor, 365 So.2d at 703 (footnote omitted). The failure to delete the two words complained of from the printed instructions simply does not constitute fundamental error and is not grounds for reversal and a new trial.
Appellant's sixth point on appeal is that the trial court erred by rejecting the jury's recommendation of life imprisonment and instead imposing the death penalty. We note at the outset the error of appellant's contention that a sentence of death imposed by a trial court after a jury recommendation of life imprisonment constitutes double jeopardy. We held to the contrary in Douglas v. State, 373 So.2d 895 (Fla. 1979). See also Phippen v. State, 389 So.2d 991 (Fla. 1980).
As to the propriety of the judge's failure to follow the jury's sentence recommendation, "[i]n order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). The trial judge found four aggravating circumstances, to wit: that the murder was committed after appellant had engaged in a kidnapping and rape, that it was committed to avoid a lawful arrest, that it was committed for pecuniary gain, and that it was especially heinous, atrocious, and cruel. He found no mitigating circumstances. Review of the record demonstrates the validity and propriety of the above findings.
Appellant contends, with regard to said findings, that the judge committed several errors. First, he contends that the judge "manifestly overlooked and failed to consider" any nonstatutory mitigating circumstances. It appears from the record, however, that the trial judge did consider such and simply found that none existed.
*813 Appellant also asserts that his due process rights were violated when the appellee was permitted to argue before the trial judge at sentencing for the applicability of two aggravating factors that had not been argued before the jury. He contends that he should be allowed "to have the existence and validity of aggravating circumstances determined as they were placed before his jury." The trial judge, however, is not limited in sentencing to consideration of only that material put before the jury, is not bound by the jury's recommendation, and is given final authority to determine the appropriate sentence. Prior cases make it clear that during sentencing, evidence may be presented as to any matters deemed relevant, see, e.g., Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976), and that a trial judge may consider information, such as presentence and psychological reports, which were not considered by the jury during its sentencing deliberations. Swan v. State, 322 So.2d 485 (Fla. 1975). Furthermore, the record indicates that the trial judge ordered the presentence investigation report on appellant, after the jury's recommendation had been received, at the request of appellant's trial counsel. Use of said information, with counsel being apprised thereof, was not improper and did not violate Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).
Appellant's last point on appeal is that the trial court erred by considering during sentencing evidence that was not introduced during the guilt determination phase of his trial. Specifically, he refers to information obtained from confessions and statements made by Rufus Stevens, who was found guilty at a separate trial of the same murder as appellant. Consideration, in sentencing appellant, of a confession admitted at Stevens' trial unconstitutionally denies appellant an opportunity to cross-examine and confront Stevens, contends appellant. He further asserts that the judge was not only aware of, but also considered the "inadmissible evidence". See Alford v. State, 355 So.2d 108 (Fla. 1977), cert. denied, 436 U.S. 935, 98 S.Ct. 2835, 56 L.Ed.2d 778 (1978).
Appellant cites Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), and Gardner v. Florida, for the proposition that the "right of confrontation protected by cross-examination is a right that has been applied to the sentencing process." Specht held unconstitutional Colorado's sex offender statute which allowed a critical finding to be made without a hearing and on the basis of hearsay evidence to which the defendant had no access. The Court reasoned:
Under Colorado's criminal procedure, here challenged, the invocation of the Sex Offenders Act means the making of a new charge leading to criminal punishment. The case is not unlike those under recidivist statutes where an habitual criminal issue is "a distinct issue" on which a defendant "must receive reasonable notice and an opportunity to be heard." Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own... . None of these procedural safeguards we have mentioned is present under Colorado's Sex Offenders Act. We therefore hold that it is deficient in due process as measured by the requirements of the Fourteenth Amendment.
386 U.S. at 610-11, 87 S.Ct. at 1212-13 (citations omitted).
The requirements of due process of law apply to all three phases of a capital case in the trial court: 1) The trial in which the guilt or innocence of the defendant is determined; 2) the penalty phase before the jury; and 3) the final sentencing process by the judge. Presnell v. Georgia, 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978); Gardner v. Florida; Green v. Georgia, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979). Although defendant has no substantive right to a particular sentence within the range authorized by statute, sentencing is a critical stage of the criminal proceeding.
*814 The sixth amendment right of an accused to confront the witnesses against him is a fundamental right which is made obligatory on the states by the due process of law clause of the fourteenth amendment to the United States Constitution. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The primary interest secured by, and the major reason underlying the confrontation clause, is the right of cross-examination. Pointer v. Texas. This right of confrontation protected by cross-examination is a right that has been applied to the sentencing process. Specht v. Patterson.
In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), it was held that a statement or confession of a co-defendant which implicates an accused is not admissible against the accused unless he has an opportunity to confront and cross-examine the co-defendant. To admit such a statement is unquestioned error. In Hall v. State, 381 So.2d 683 (Fla. 1979), we held that statements or confessions made by a co-defendant are inadmissible as evidence against defendant at the guilt phase of the trial.
The record shows that the trial judge was not only made aware of this inadmissible evidence but he did, in fact, consider it. Thus, the distinction made by this Court in Alford v. State is not applicable.
The consideration of the confession or statement of a co-defendant is quite different from the consideration of a presentence report. If the defendant disputes the truth of a presentence report, he has the right to secure confrontation and cross-examination if he wishes to do so. See Eutsey v. State, 383 So.2d 219 (Fla. 1980). On the other hand, a defendant cannot require a co-defendant to waive his constitutional right to remain silent and force him to testify during the sentencing procedure.
The conviction of defendant is affirmed, but sentence is vacated and the cause is remanded with instructions to conduct another sentence hearing. It will not be necessary to empanel another jury.
It is so ordered.
ADKINS, OVERTON, McDONALD and EHRLICH, JJ., concur.
ALDERMAN, C.J., concurs in part and dissents in part with an opinion, in which BOYD, J., concurs.
ALDERMAN, Chief Justice, concurring in part, dissenting in part.
I concur with the affirmance of Engle's conviction. I dissent, however, to the reversal and remand of his death sentence on the basis that Engle was denied his sixth amendment right to confront a witness during the sentencing phase of his trial. Engle argues that he was deprived of this constitutional right because the trial court, during the sentencing phase, considered a confession admitted at Stevens' trial and denied him an opportunity to cross-examine and confront Stevens. This information was furnished to defendant and his counsel for rebuttal purposes pursuant to Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). The only question is whether the trial judge should have considered the information without permitting cross-examination of the codefendant.
In reaching the decision that the due process requirement regarding confrontation of a witness required this cross-examination during the sentencing phase of Engle's case, the majority opinion relies primarily on Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); and Gardner v. Florida. These decisions, however, do not compel the conclusion reached by the majority.
Specht is distinguishable on its facts and, as the Court stated in its opinion, deals with a "radically different situation." 386 U.S. at 608, 87 S.Ct. at 1211. In Specht the Court was confronted with a sentencing procedure involving Colorado's Sex Offenders Act. The Court found that sentencing Specht under the Sex Offenders Act rather than the statute for which he was convicted actually resulted in "the making of a new *815 charge leading to criminal punishment." Id. at 610, 87 S.Ct. at 1212 (emphasis added). In reaching its decision that this introduction of what constituted a new charge at the sentencing phase violated the defendant's due process rights, the Court made it clear that it was not receding from its holding in Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).
The Court in Williams specifically stated:
The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts  state and federal  from making progressive efforts to improve the administration of criminal justice.
337 U.S. at 251, 69 S.Ct. at 1085. In applying this rationale to a death penalty case, the Court held that it could not find that "the due-process clause renders a sentence void merely because a judge gets additional out-of-court information to assist him in the exercise of this awesome power of imposing the death sentence." Id. at 252, 69 S.Ct. at 1085. The decision of the Supreme Court of the United States in Williams, holding that due process does not require that a defendant be allowed to confront and cross-examine witnesses testifying at his sentencing proceeding, is controlling in the present case.
Gardner v. Florida does not compel reversal of the death sentence. Under the facts of the present case, Engle's counsel was apprised of all information upon which the trial judge relied in sentencing Engle and was given full opportunity to deny or explain this information.
Accordingly, I would find no due process violation, and I would affirm both the conviction and the sentence of death.
BOYD, J., concurs.