## THE STATE v. POTTS.

1. **Bribery** : AGREEMENT TO RELEASE CONTRABAND LIQUORS : INDICTMENT. An indictment charging the defendant with receiving a bribe, in consideration of his agreement to release contraband liquors held by him as a constable, is not bad because it is not shown therein that he had any power or authority to release the liquors. It is sufficient to render him guilty of the crime if he, for a consideration, agreed to use his official position in thwarting the ends of justice in regard to the liquors.

2. ———: ———: ———: DUPLICITY. One count of the indictment in this case charged the defendant with accepting a bribe in consideration of his agreement to release certain contraband liquors held by him as a constable. Another count charged the same offense, and alleged that it was committed by means of an unlawful conspiracy between defendant and H. and W., but in reference to the crime charged the following language was used: "The two counts in this indictment describe but one transaction, and are intended to charge but one offense." *Held* that the indictment was not bad for duplicity, but was simply charging the offense under different forms, to meet the testimony, as may be done under section 4300 of the Code.

3. **Witnesses** : IMPEACHMENT : EVIDENCE. A witness who has lived at the place of trial for five years cannot be impeached by evidence that his reputation for truth and veracity is bad at places where he formerly lived, and such evidence, when offered for that purpose and objected to, should be excluded.

4. **Instructions** : MATTERS IN DOUBT TREATED AS FACTS. An instruction is erroneous which assumes as true certain material matters as to which the evidence is conflicting. (See opinion for illustration.)

*Appeal from Polk District Court.*—Hon. Marcus
Kavanagh, Jr., Judge.

Filed, October 26, 1889.

The defendant was tried and convicted upon an
indictment for receiving a bribe, and he appeals.

*W. A. Spurrier* and *Seth Morgan*, for appellant.

*John Y. Stone*, Attorney General, for the State.

Rothrock, J.—I.   The indictment is in two counts.
In the first count it is alleged that on the fourth day of
February, 1888, the defendant was a duly-qualified con-
stable in and for Saylor township, in Polk county, and
that, as such officer, he had seized and had in his pos-
session a large amount of intoxicating liquors, the
property of one John Connelly ; that said liquors were
seized and held by defendant under a search-warrant,
issued by a justice of the peace in pursuance of the pro-
visions of the law prohibiting the traffic in intoxicating
liquors ; and that, while in possession of the same, the
defendant wilfully, corruptly and unlawfully received
from said Connelly the sum of one hundred dollars as a
bribe, reward or consideration for omitting to perform
his official duties, in undertaking and promising said
Connelly to procure the release and discharge of said
liquors so held by him.   The second count purports to
charge the defendant with the same offense ; that is, it
is averred therein that defendant is charged with the
crime of receiving a bribe from John Connelly under
an agreement to procure the release of said liquors.   It
is also alleged that said crime was committed by means
of an unlawful conspiracy entered into between the
defendant and one G. B. Hamilton and O. C. West,
and in reference to the crime charged against the
defendant the following language is employed :  "The
two counts in this indictment describe but one transac-
tion, and are intended to charge but one offense."

The State v. Potts.

The defendant demurred to the indictment on the ground that it is not shown therein that the defendant had any power or authority to release the liquors held by him, and that, having no such power, he could not be guilty of receiving a bribe as alleged. The demurrer was overruled. It is true, the defendant had no power to issue an order for the discharge of the property; but it was in his possession and under his control as an officer, and we think that any agreement by which he undertook to thwart the ends of justice by using his official position in procuring the release of the intoxicating liquors would subject him to the penalties of the crime of receiving a bribe. In our opinion, the ruling on the demurrer was clearly correct.

1. BRIBERY: agreement to release contraband liquors: indictment.

II. It was claimed in the court below, and is claimed here, that the indictment is bad for duplicity, in that it charges the crime of receiving a bribe, and also a conspiracy between two or more persons to do an unlawful act. We have stated the substance of the two counts in the indictment. It will be observed that the pleader did not intend to charge the defendant with the commission of two crimes. It is expressly so stated in the second count. The court so regarded it, and the defendant was tried for but one offense. It is true, there is language in the second count which, considered alone, without reference to the distinct charge, might be regarded as an attempt to charge the defendant with the crime of conspiracy; but the whole count is no more than a charge for accepting a bribe, and the evident intention was to charge the same offense in different forms to meet the testimony, as may be done under section 4300 of the Code. This is apparent from the evidence introduced upon the trial. It appears therefrom that some three or four stocks of liquors, belonging to different parties, were seized and held by the defendant at the same time, and all were released at about the same time. There was evidence tending to show that defendant and said Hamilton, another constable, and West, who made affidavit to the

2. ———:———:———: duplicity.

informations upon which the search-warrants were issued, all participated in the negotiations for the release of the liquors. It was not claimed by counsel for the state, in the trial in the court below, that the sum of one hundred dollars was actually paid by Connelly to the defendant. Connelly testified that he paid it to Hamilton ; but it was claimed that the defendant had knowledge of it and was a party to the transaction, and received part of the money. We think that all of this evidence might have been introduced without alleging a conspiracy or collusion between these parties, upon the principle that what a person does by another he does himself ; but that is no reason for holding the indictment bad for duplicity. The second count was no doubt intended to vary the charge so as to meet the proof, and designating it as a conspiracy was no more than charging that the defendant was aided and abetted by others in the commission of the crime of receiving a bribe.

III. The trial was had in the court below in the month of April, 1888. It was claimed in behalf of the

3. WITNESSES: impeachment: evidence.

state, and there was evidence tending to show, that the defendant received part of the money which it was claimed was paid by Connelly to Hamilton ; but every criminating fact in the case was directly disputed by Hamilton, West and the defendant. The defendant testified as a witness in his own behalf. After he had been examined as a witness, the state sought to impeach him generally by the testimony of witnesses to the effect that his reputation for truth in the city of Des Moines was bad. It appears that at the time of the trial, and for some years prior thereto, he was a resident of Des Moines. Before his removal to Des Moines he resided at Newton, in Jasper county, and for a short time at Brooklyn, in Poweshiek county. The state called eleven witnesses, residents of the two last-named places, who testified that they knew the defendant when he resided in those places, and that his reputation when he resided there was bad. This testimony was objected to by defendant, and the objection

was overruled. Counsel for the defendant claims this
was error. We are of the opinion that the position of
counsel is correct. In 1 Greenleaf on Evidence, section
461, it is said that "the regular mode of examining into
the general reputation is to inquire of the witness
whether he knows the general reputation of the person
in question among his neighbors, and what that reputa-
tion is;" and "he [the impeaching witness] must be
able to state what is generally said of the person by
those among whom he dwells, or with whom he is
chiefly conversant." In 1 Wharton on Evidence, sec-
tion 563, it is said: "It is inadmissible to ask what
character or reputation the impeached witness had in a
neighborhood in which he was a non-resident." In
*Webber v. Hanke*, 4 Mich. 198, a witness testified that
he knew the reputation for truth of the witness sought
to be impeached in the old country five years before the
trial. It was held that the question as to what that
reputation was ought not to have been allowed. There
is no doubt that the general rule is that the inquiry
must be confined to the place of residence at the time of
the trial; but this is subject to the exception that the
present residence may be of so brief duration that no
sufficient time has elapsed for a reputation to have been
acquired. In such cases as these, it is said in Greenleaf
on Evidence, the inquiry should be, what is his reputa-
tion where he is best known? But in the case at bar
there was no reason for such an exception. The defend-
ant had not resided at Brooklyn nor Newton for about
five years. His residence had been at Des Moines, and
there was abundant evidence as to his reputation at the
last-named place. A number of witnesses were exam-
ined by the state who testified that his reputation for
truth at Des Moines was bad, and quite as many testi-
fied in his behalf to the effect that it was good. Indeed,
from the evidence in the case, the defendant was well
known at Des Moines, and his character appears to have
been quite freely discussed among his neighbors.

IV. The defendant's counsel complain of the fol-
lowing instruction given by the court to the jury:

4. INSTRUCTIONS: "(4) The acts, conduct, declarations and matters in doubt treated as facts. agreements with the said John Connelly, made by O. C. West or G. B. Hamilton, in relation to said stock of liquors, or the release thereof, if made with the knowledge and consent of the said G. W. Potts, or by the authority of the said G. W. Potts, would be the acts, conduct, declaration or agreement of said G. W. Potts himself." This instruction is erroneous. It assumes that O. C. West and G. B. Hamilton did acts and made declarations and agreements with Connelly in relation to the said stock of liquors. The evidence upon this question is conflicting, and the jury should have been directed that they must find that said acts and declarations were proven before they could impute any of them to the defendant; and the jury should have been instructed, in that connection, that, before the defendant could be held criminally liable for any of the acts or declarations of Hamilton or West, it must be shown that a corrupt combination existed between these parties to effect the release of the liquors for a bribe; and that, when this fact was found, then each one of them was responsible for all the acts and declarations of the others done pursuant to the common design. For the errors above pointed out the judgment of the district court will be                      REVERSED.