65 So.2d 558 (1953)
RAINES
v.
STATE.
Supreme Court of Florida, en Banc.
March 31, 1953.
Rehearing Denied June 2, 1953.
*559 William C. Pierce and Manuel M. Garcia, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., and Leonard Pepper, Asst. Atty. Gen., for appellee.
TERRELL, Justice.
Appellant and V.R. Selph were tried for bribery on an information in three counts. The first count charged appellant with exacting a bribe of $500 from Tracy Phillip to issue him a license to practice barbering in Florida. The second count charged that appellant accepted the bribe. The third count charged appellant and Selph jointly with exacting and accepting the bribe. Appellant was convicted on counts one and two and Selph was acquitted. Appellant was sentenced to a term of five years in the state penitentiary. We are confronted with an appeal from that judgment.
It is first contended that the trial court committed error in recessing the Court, sending the jury home for the night about 6:30 P.M., and ordering it to reassemble the next morning at 9:30 A.M. to continue its deliberations.
The record discloses that the case had been fully submitted to the jury and that it had been deliberating for more than one and one-half hours without reaching a verdict when the recess was taken. It was taken without consent of or objection on the part of counsel and the jury went home for the night without any instructions or the protection of a bailiff. They were out for fifteen hours, resumed deliberations, found defendant guilty, and acquitted his co-defendant.
Section 919.01(1), F.S.A., provides in effect that after the jury is sworn it shall sit together, hear the proofs against the accused and that it shall be kept together in some convenient place till it agrees on a verdict or is discharged. Section 919.02, F.S.A., provides for separation of the jury for a definite period. Section 920.05, F.S.A., details grounds for new trial, and Section 924.33, F.S.A., provides that no judgment shall be reversed for error unless it is shown to have injuriously affected the substantial rights of the appellant. It further provides that error affecting substantial rights shall not be presumed.
The state contends that when read together these statutes permit separation of the jury and that when done a new trial will not be granted unless substantial rights of defendant have been affected and that defendant having failed to object when the jury was recessed for the night, waived his right to object at this time. The following cases are relied on to support this contention. Lucas v. United States, 8 Cir., 275 F. 405; State v. Dugan, 52 Kan. 23, 34 P. 409; State v. McNeil, 59 Kan. 599, 53 P. 876; Farris v. State, 74 Tex.Cr.R. 607, 170 S.W. 310; Fowler v. Commonwealth, 260 Ky. 433, 86 S.W.2d 148.
The record does not show that appellant raised any objection whatever to the order of the Court permitting the jury to separate and go to their homes for the night. In the last cited case the Kentucky Court held that no objection having been made at the time, appellant waived his right to object and could not raise it the first time on motion for new trial. The following cases support this view: Sharp v. People, 90 Colo. 356, 9 P.2d 483; Williams v. State, 27 Ala.App. 293, 171 So. 386; Martin v. State, 92 Okla. Cr. 182, 222 P.2d 534.
Whether or not separation of the jury for the night without instruction as to communicating with others and without the protection of bailiff was error, turns on the interpretation of the governing statutes cited in the forepart of this opinion. There was no objection raised when the jury was dispersed, nor were counsel consulted. There is no showing in the way of evidence that defendant's rights were prejudiced but trials should not be conducted in a way that defendant has good reason for the belief that he was deprived of fundamental rights. *560 The opportunity was open for tampering with the jury and the temptation to do so was such that we are not convinced that the appellant's trial was conducted with that degree of fairness and security that the bill of rights contemplates. A fifteen hours absence under no restraint whatever leaves too much room to question the bona fides of everything that took place during that time, particularly when one defendant was acquitted and the other was convicted on the same charge and evidence. It imposes too great a burden on defendant to produce evidence of prejudice to his rights under such circumstances. We think this error calls for reversal.
It is next contended that appellant, being a member of the State Barber Board, with two others, was without authority to issue a license to practice the business of a barber, and being so, he could not legally be convicted of a charge that he was powerless to commit.
The rule seems to be well settled that an officer cannot be charged and convicted of an act that is entirely outside the scope of his legal duties. This court is committed to the doctrine that any one who corruptly offers, gives, or receives anything of value to influence the receiver's official action, is guilty of bribery. Richards v. State, 144 Fla. 177, 197 So. 772; State v. Potts, 78 Iowa 656, 43 N.W. 534, 5 L.R.A. 814; People v. Jackson, 191 N.Y. 293, 84 N.E. 65, 15 L.R.A.,N.S., 1173; State v. Ellis, 33 N.N.L. 102, 97 Am.Dec. 707; Rembrandt v. United States, 6 Cir., 281 F. 122, certiorari denied 260 U.S. 731, 43 S.Ct. 93, 67 L.Ed. 486; People v. McGarry, 136 Mich. 316, 99 N.W. 147, and many others.
The last cited cases are in harmony with the rule approved in this state with reference to giving or receiving anything of value to influence one's official conduct, so there is no merit to appellant's contention in support of that point.
The judgment appealed from is therefore reversed and a new trial awarded.
Reversed.
ROBERTS, C.J., and HOBSON and DREW, JJ., concur.
THOMAS and SEBRING, JJ., dissent.
MATHEWS, J., not participating.
DREW, Justice (concurring specially).
The plain mandate of the Legislature, section 918.06, F.S.A., was violated by the lower court in this trial. I cannot conscientiously say that "the substantial rights of the defendant have not been prejudiced" where the record shows a conviction and a sentence to five years in the State Prison. I, therefore, agree that the ends of justice would be served by awarding a new trial.
SEBRING, Justice (dissenting).
I agree with the conclusion reached in the majority opinion which rejects appellant's claim that because he was without authority to issue a barber's license he could not legally be convicted of a charge that he was powerless to commit. I agree, also, that under the controlling statutes the trial judge had no authority to permit the jurors to separate after they had retired to consider their verdict. I cannot agree, however, that because the jurors were allowed to separate temporarily, a reversal of the judgment appealed from should be ordered.
As I understand the applicable law, the situations under which the members of a petit jury may be allowed to separate in the course of a criminal trial are expressly delineated by sections 918.06 and 919.02, Florida Statutes 1951, F.S.A.
Section 918.06 provides, in effect, that after the jurors have been sworn but before the cause has been finally submitted to them the trial judge, in his discretion, may permit them to separate. Section 919.02 provides, in effect, that if the jurors have not been kept together during the trial but have been allowed to separate in accordance with the provisions of section 918.06, supra, the trial judge, after the final submission of the cause but before the jury has retired to consider its verdict, may order "that the jurors may separate for a definite time to be fixed by the court and then reconvene in the courtroom before retiring for consideration of their verdict." (Italics supplied.)
These are the only statutes which allow the separation of jurors in the course of a *561 criminal trial, and, as plainly appears from their language, are applicable only as to separation of jurors prior to the time the jury has retired to consider its verdict.
After the case has been submitted and the jury has retired to consider its verdict a different rule obtains. Section 919.01(1), Florida Statutes 1951, F.S.A., prescribes that after the jurors have heard the proofs and allegations in the case they "shall be kept together in some convenient place until they agree upon a verdict or are discharged by the court * * *." (Emphasis supplied.) It is clear, therefore, that once the jury in a criminal case retires to the jury room to consider its verdict it should not be allowed to separate until it has reached a verdict or has been discharged by the court for valid reasons.
Section 919.21, Florida Statutes 1951, F.S.A., sets out five grounds upon which the trial court may discharge the jury after it has retired to the jury room to consider its verdict. These grounds are that the verdict of the jury has been duly recorded in the minutes of the court; that a necessity exists for the discharge of the jury; that upon the expiration of such time as the court deems proper, the court is convinced that there is no reasonable probability that the jurors can agree upon a verdict; that the court has finally adjourned; that the prosecuting attorney and the defendant have consented that the jury may be discharged.
In the instant case the record shows that after the jury had retired, and while it was considering its verdict, the presiding judge called the jurors back into the courtroom and then permitted them to separate so that they might spend the night at home. They returned the next morning and were sent back into the jury room for further deliberations. Subsequently they brought in their verdict, and, after the same had been recorded, were discharged from further consideration of the case.
It is contended by the appellants that the act of the trial judge in permitting the jurors to separate for the night constituted, ipso facto, such reversible error as to require a new trial, under the statutes and the decisions.
As respects this incident, the record is plain that at the time the trial judge called the jurors back into the courtroom for the purpose of letting them disperse for the night, no objection thereto was made by the defendant. Moreover, no objection was voiced by the defendant as to what had transpired when the jury convened the following morning. Indeed, the point was never raised until after a motion for new trial had been filed in the cause and then it was raised by a pleading styled "Supplement to Motion for New Trial and/or Discharge of Defendant Raines," filed 15 days after the rendition of the verdict.
In Miller v. Pace, 71 Fla. 274, 71 So. 276, a crucial point at issue was whether a judgment of the lower court should be reversed on the ground of misconduct affecting the trial jury; the alleged irregularity complained of being that throughout the trial defense counsel had conveyed two jurors to and from their homes to the courthouse each morning and evening. No objection was made to what was transpiring until after the verdict was entered. Upon appeal, this Court held that inasmuch as the point was not raised until after the verdict had been returned and the jury had been discharged, the appellant had waived his right to insist upon the alleged irregularity.
If we are to give effect to the previous rulings of this Court the principle stated in Miller v. Pace must be deemed controlling. For in the case at bar, the defendant failed to register his objection when the trial judge permitted the jurors to separate and go home for the night. He remained silent when the jurors returned the next morning. He never attempted to raise the point until after an adverse verdict had been rendered and the jury discharged.
But even assuming that the defendant did not waive his right to raise the point on appeal by his failure to object before the rendition of the verdict, can it be said that merely because the trial judge permitted the jurors to separate, even though he had no statutory authority to do so, a new trial must necessarily follow?
Section 920.05, Florida Statutes 1951, F.S.A., contains the provision that "The court *562 shall grant a new trial if any of the following grounds are established, provided the substantial rights of the defendant have been prejudiced". In the statute twelve grounds authorizing the setting aside of a verdict or arresting a judgment are given. The twelfth ground provides: "The court shall * * * grant a new trial when from any other cause not due to his own fault the defendant has not received a fair and impartial trial * * *." But section 924.33, Florida Statutes 1951, F.S.A., which must necessarily be considered in connection with the foregoing statute, contains the plain mandate that "No judgment shall be reversed unless the appellate court after an examination of all the appeal papers is of the opinion that error was committed which injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant."
How can it be said, in view of the unequivocal provisions of section 924.33, that merely because the trial judge allowed the jurors to separate for the night the substantial rights of the defendant were thereby prejudiced to such an extent as to require the judgment to be set aside and a new trial awarded? Where in the record is even the slightest suggestion that after the jurors left the courtroom they were guilty of any misconduct which might have affected the ultimate outcome of the trial? If such evidence is not in the record, then what logical ground exists for the reversal of the judgment?
The majority of the Court concede that no misconduct on the part of the jurors has been shown; for in the main opinion expressing the majority view it is stated, "There is no showing in the way of evidence that defendant's rights were prejudiced * * *." Yet, in the face of this finding the opinion nevertheless concludes "* * * but trials should not be conducted in a way that defendant has good reason for the belief that he was deprived of fundamental rights. The opportunity was open for tampering with the jury and the temptation to do so was such that we are not convinced that the appellant's trial was conducted with that degree of fairness and security that the bill of rights contemplates. A fifteen hours absence under no restraint whatever leaves too much room to question the bona fides of everything that took place during that time, particularly when one defendant was acquitted and the other was convicted on the same charge and evidence. It imposes too great a burden on defendant to produce evidence of prejudice to his rights under such circumstances. We think this error calls for reversal."
With all due deference to the majority view, I find myself unable to agree with this thesis. Any "tampering" with the jury of which the appellant could have legal cause to complain would necessarily have to be "tampering" with the end in view of securing the conviction of the defendant. But, as the majority opinion indicates, there is not the slightest suggestion in the record that any "tampering" happened or was attempted  and I am not willing to assume the probability, or even possibility, of such conduct, in the utter absence of some evidence in the record tending to support the assumption.
I also find myself unable to agree with the reasoning in the concurring opinion filed by one of the majority, which seems to be that because the defendant was found guilty on the evidence adduced and has thereby become subject to incarceration, this is incontrovertible proof of the fact that the defendant's constitutional rights were prejudiced by the separation of the trial jury. I presume that anyone obliged to suffer imprisonment might feel that he had some ground for complaint in that the confinement and restraint operated to deprive him of his right to liberty; but this is not the type of thing that section 924.33 aims at when it says that "No judgment shall be reversed unless * * * error was committed which injuriously affected the substantial rights of the appellant", and "It shall not be presumed that error injuriously affected the substantial rights of the appellant."
From my study of the record I am convinced that, except for the action of the trial judge in allowing the jury to separate, the trial was free from error. Though it *563 may well be that the trial judge should not have permitted the separation of the jurors, in view of the strict limitations of the statutes, I think it plain that the defendant waived his right to complain by not making a timely objection. Miller v. Pace, supra. I am also of the view, assuming Miller v. Pace not to be applicable, that the defendant has failed to make it appear by the record that his rights were prejudiced by such action or that because thereof he did not receive a fair and impartial trial.
Accordingly, I must dissent from the majority opinion.
THOMAS, J., concurs.

On Petition for Rehearing.
TERRELL, Justice.
The petition for rehearing proceeds on the theory that the instant case is an identical twin of and is ruled by Webb v. State, Fla., 62 So.2d 410, decided three months ago, but that the Court has turned hand springs to reverse itself without any reference to the Webb case or attempt to qualify it in any manner.
Let us see if the record shows that the Webb case and the instant case are identical. The Webb case stemmed from a charge of murder in the first degree. There was a conviction of murder in the second degree and a sentence to twenty-five years at hard labor in the State penitentiary, and while it was contended that the jury was permitted to separate after the case was submitted to them, the Court found that no such separation was shown. It was shown that the jury was permitted to go to lunch in care of a bailiff, that it was properly instructed, but that is not the kind of separation condemned by the statute, F.S.A. § 920.05.
The instant case stemmed from a charge and conviction of bribery, a sentence to five years in the state penitentiary and an undisputed showing that after the case was submitted to the jury and they had deliberated on it for more than an hour, they were recessed late in the afternoon and went to their respective homes for the night without the protection of a bailiff or proper warning by the court. They returned to their deliberations the next morning, more than fifteen hours after they were recessed, found defendant guilty and acquitted his codefendant.
Under this state of facts we see no basis in reason to contend that the case at bar is ruled by the Webb case. In fact, they are identical in no point. One might with equal propriety contend that baby's pet kitty is identical to a Bengal tiger or that a rat terrier is the prototype of an elephant. We did not then, and do not now, consider the cases similar. It is true, that the question of permitting the jury to separate after the case was submitted to them was raised in both cases, but in the Webb case we found that no such separation was shown, while in the case at bar the facts constituting it were admitted.
After all, the point in the present case was whether or not defendant had a fair trial as contemplated by the constitution. A majority of the court felt that in view of the safeguards vouchsafed to one charged with crime, a fair trial was denied defendant, that it would place an undue burden on him to show that the minds of the jury were in no way prejudiced against him during more than fifteen hours absence from the court, without the protection of bailiff or ample instruction as to their conduct during absence. A defendant on trial is entitled to such protection and the state is required to give it to him.
There is no more certain way to destroy fair trial than going loose or indifferent to the guarantees that the, F.S.A.Const. Bill of Rights throws around it. The writer of this opinion discussed the point more fully in his concurring opinion in Gluck v. State, Fla., 62 So.2d 71. In our country we test the law by its effect on the individual. It is of no concern whether a good man or a bad one is on trial. The rights of the good man are secure only when those of the bad man are protected and secured. When the rights of the bad man are ignored, those of the good man must go under the same ban. Experience teaches that when suppression *564 takes hold of the rights of either it spreads rapidly and that it is no respecter of persons.
The petition for rehearing is denied.
ROBERTS, C.J., and HOBSON and DREW, JJ., concur.
THOMAS and SEBRING, JJ., dissent.