486 So.2d 1373 (1986)
Michael ULLOA, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-474.
District Court of Appeal of Florida, Third District.
April 15, 1986.
Bennett H. Brummer, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before BARKDULL, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
In 1982, Michael Ulloa, indicted for first-degree murder, was convicted by a jury of second-degree murder and sentenced to a *1374 thirty-year term of imprisonment. The following year, this court affirmed his conviction. Ulloa v. State, 441 So.2d 169 (Fla. 3d DCA 1983). Neither at his trial nor on his appeal did Ulloa complain about the fact that the jurors that convicted him were separated for a weekend after they had begun their deliberations on a Friday afternoon.
In 1984, the Supreme Court of Florida decided in Livingston v. State, 458 So.2d 235 (Fla. 1984), a capital case, that if the defendant objected, it was per se reversible error to allow a jury which had begun its deliberations to separate for the weekend. Perhaps stirred by Livingston, but, as will be seen, understandably eschewing complete reliance on it, see n. 6 infra, Ulloa moved under Florida Rule of Criminal Procedure 3.850 to set aside his conviction contending that the separation of deliberating jurors is fundamental error, that is, one which is cognizable on a Rule 3.850 motion, notwithstanding his failure to object at trial and raise it on direct appeal. See Smith v. State, 453 So.2d 388 (Fla. 1984); Nova v. State, 439 So.2d 255 (Fla. 3d DCA 1983). From the trial court's summary denial of his motion, Ulloa appeals.
In support of his contention, Ulloa looks first to Raines v. State, 65 So.2d 558 (Fla. 1953), the decision primarily discussed in Livingston. In Raines, the court reversed a bribery conviction, despite the lack of defense objection, where the jury was separated overnight "without any instructions[1] or the protection of a bailiff." Id. at 559. Significant to Raines was the fact that a since-repealed statute mandated the sequestration of deliberating jurors.[2] As the court there acknowledged, "[w]hether or not separation of the jury for the night without instruction as to communicating with others and without the protection of bailiff was error, turns on the interpretation of the governing statutes... ." Id.
Quite obviously, then, only some of the ingredients of Raines are palatable to Ulloa. Like Raines, Ulloa was convicted of a non-capital offense, and, like Raines, Ulloa did not object to the jury's separation. But, unlike Raines, Ulloa's jury was "instructed as to communicating with others" before they were allowed to separate,[3] and, unlike Raines, Ulloa's jury was not required *1375 by rule or statute to remain together after deliberations had begun. See n. 2 supra.
Unable to digest the discordant pieces of Raines, Ulloa turns to Livingston from which he selects nourishment more to his liking. In Livingston, he finds a declaration of error notwithstanding that, as in Ulloa's case, the jury was admonished before separation and no statute or rule required that the jurors be kept together once deliberations had begun. Discarding the fact that, unlike Livingston, Ulloa failed to object to the jury's separation, and that, unlike Livingston, Ulloa was convicted of a non-capital crime,[4] the defendant blends the best of Raines and Livingston and concocts the conclusion that it is reversible error to permit a deliberating jury to separate for the weekend[5] in any case  *1376 capital or non-capital (Raines)  even though (a) the defendant has not objected to the separation (Raines), (b) the jury has been given appropriate admonitions before separating (Livingston), and (c) no statute or rule prohibits their separation (Livingston).
We think it clear, however, that Raines and Livingston cannot be so selectively blended to produce Ulloa's desired fundamental error rule. Ulloa is left with the argument that under the law in existence at the time of his conviction, that is, pre-Livingston law, it was fundamental error to allow his deliberating jury to separate.[6] That argument, however, must fail because this case lacks the elements that gave rise to pre-Livingston reversible error.
As we have previously noted, the decision in Raines expressly turns on a since-repealed statute requiring that deliberating jurors be kept together. Were that not enough to erode any contention of fundamental error, it is apparent from Engle v. State, 438 So.2d 803 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984), that Raines announced no fundamental error rule. See Fowler v. State, 483 So.2d 757 (Fla. 5th DCA 1986) (Dauksch, J., concurring specially). In Engle, the court, rejecting the defendant's reliance on Raines as controlling, affirmed a first-degree murder conviction notwithstanding that the jury was separated overnight during deliberations. Significantly, the court distinguished Raines on the ground, inter alia, that in Engle, unlike Raines, the trial judge admonished the jurors not to discuss the case or watch, listen to, or read any media reports. The Engle court was "convinced that appellant's trial was conducted with that degree of fairness and security that the bill of rights contemplates, and [did] not believe that he [had] good reason to believe that he was deprived of any fundamental rights." 438 So.2d at 808 (emphasis in original). In contrast, in Raines, where the separation was not preceded by an admonition to the jury, the court wrote that it was "not convinced that the appellant's trial was conducted with that degree of fairness and security that the Bill of Rights contemplates." Thus, insofar as the integrity of the fact-finding process is concerned, the essential difference between Raines and Engle is the admonition to the jurors.[7]
Admonitions, and the presumption that jurors obey them, are central to cases concerned with the question of whether the separation of jurors constitutes reversible error. Uniformly, in the absence of a rule or statute prohibiting the separation of deliberating *1377 jurors,[8] such a separation after appropriate admonition to the jurors will not be presumed prejudicial and is not reversible error, much less fundamental error. Thus, in State v. Magwood, 290 Md. 615, 432 A.2d 446 (1981), the court, noting that the deliberating jury had been admonished before separation, refused to presume that the jurors ignored the admonitions since the "protection against the evil of the jurors being influenced by outside contacts is ordinarily provided by an appropriate admonition from the judge and presumed adherence thereto by a jury impressed with their solemn duty... . The record does not indicate, nor has [the defendant] suggested, facts which demonstrate any violation of this court instruction." 290 Md. at 625, 432 A.2d at 451.
Similarly, in Harkness v. State, 271 Ark. 424, 609 S.W.2d 35 (1980), the court, finding no prejudice where the jury separated during deliberations and the judge polled the jurors as to whether they had read newspaper articles about the trial upon reconvening, said that
"[w]hen a jury has been clearly admonished not to do a certain act, the mere opportunity to violate the admonition without a vestige of proof of its violation, provides no basis upon which a court of review can find that the trial court has abused its discretion in refusing to investigate the jury for such possible misconduct. As an essential of a fair and impartial trial, there is no presumption that the jury is likely to take advantage of every opportunity to disregard the cautionary instructions of the court."
271 Ark. at 426, 609 S.W.2d at 37.
The rule in the federal courts is the same. See United States v. Williams, 635 F.2d 744 (8th Cir.1980) (trial court has considerable discretion in ordinary criminal cases to separate a jury during deliberations, so long as trial court admonishes jurors at time of separation as to duties and responsibilities when not in court); United States v. Carter, 602 F.2d 799 (7th Cir.1979) (once appropriate procedures for admonishing and interrogating jurors have been followed, reviewing court is entitled to conclude that the jury was not exposed to potentially prejudicial publicity); United States v. Arciniega, 574 F.2d 931 (7th Cir.), cert. denied, 437 U.S. 908, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978) (for a separation to constitute reversible error there must be an objection supported by specific reasons against separation and a showing that defendant was actually prejudiced). See also II, ABA Standards for Criminal Justice, Standard 8-3.6(b) (1980); III, ABA Standards for Criminal Justice, Standard 15-3.7(a) (1980); ABA Standards Relating to Trial Courts, Section 2.64(d) (1976); and ABA Standards Relating to Jury Use and Management, Standard 19 (1983).
We conclude, therefore, that neither Raines nor any other pre-Livingston law[9] is of any help to Ulloa. Ulloa's jury was *1378 admonished before separation and is presumed to have obeyed those admonitions, a presumption which Ulloa does not even suggest can be overcome. And, since Ulloa can take no comfort in Livingston itself, see n. 6 supra, the decision of the trial court must be
Affirmed.
NOTES
[1] Presumably, "instructions" refers to the admonitions then required by Section 918.06, Florida Statutes (1951), that the jurors are "not to converse among themselves, or with any one else, on any subject connected with the trial, or to form or express any opinion thereon ... [and] ... not to view the place where the offense appears to have been committed." Justice Drew, concurring specially in Raines, would have reversed on the ground that Section 918.06 was plainly violated.
[2] The statute in question, Section 919.01(1), Florida Statutes (1951), provided: "After the jury shall have been sworn they shall sit together and hear the proofs and allegations in the case ... and after hearing such proofs and allegations the jury shall be kept together in some convenient place until they agree upon a verdict or are discharged by the court. ..." (emphasis supplied). After the adoption of the Florida Rules of Criminal Procedure, which contain no such mandate, the statute was repealed by Chapter 70-339, Section 180, Laws of Florida.
[3] The court below admonished the jury five times not to discuss the case with anyone or go to the alleged crime scene. The admonitions occurred at least once before the close of each day, and the court did not and was not requested to voir dire the jury when court commenced each day. After the jury was sworn, the court told the jury not to discuss the case among themselves or with family or friends. Immediately before the first overnight adjournment, the court readmonished the jury not to discuss the case and to report anyone who persisted in talking about it in their presence. The following day before declaring the evening recess, the court admonished the jury not to discuss the case among themselves or with others or to go to the alleged crime scene. The same admonition was given the next day after closing arguments and just before an overnight recess. On Friday, after the jury was instructed and had deliberated for seven hours, the judge admonished them not to discuss the case among themselves or with family, friends or relatives and not to go to the alleged crime scene. This admonition occurred immediately before the court recessed for the weekend. On the following Monday, the jury resumed deliberations at 9:00 a.m. and brought in a verdict of guilt as to second-degree murder as a lesser-included offense of the charge of first-degree murder at 10:57 a.m.
[4] Because we find the Livingston rule to be inapplicable to Ulloa, see n. 6 infra, we need not decide whether the rule is restricted to capital cases or whether a case, as here, where the defendant is charged with a crime punishable by death but convicted of a crime not punishable by death is, in that event, a "capital" case.

Whether the rule should be restricted to capital cases depends, we believe, upon its purpose. Rules designed to provide extra certainty in a capital case (as, for example, the twelve-person jury, see Fla.R.Crim.P. 3.270; the right to ten peremptory challenges, see Fla.R.Crim.P 3.350(a); the right to have the judge instruct as to the penalty, see Fla.R.Crim.P. 3.390(a); the right to have the jury instructions in writing, see Fla.R.Crim.P. 3.390(b); the necessity for the defendant to personally waive an instruction on lesser-included offenses, see Jones v. State, 484 So.2d 577 (Fla. 1986); and the guarantee of a direct appeal to the Florida Supreme Court, see Art. V, § 3(b)(1), Fla. Const.), are arguably different from rules, like Livingston, designed to insure the integrity of the fact-finding process. See Taylor v. State, 481 So.2d 970 (Fla. 5th DCA 1986) (Dauksch, J., dissenting) (the principle of Livingston should not be affected by degree of punishment; the rule should apply to non-capital as well as capital cases).
Whether the present case should be deemed a capital case depends, we believe, on the possibility of capital punishment when the act complained of occurred. The cases involving crimes labeled "capital" but not punishable by death are in two categories. In cases where death as a punishment was unavailable at the time the defendant was charged, the courts have held that the procedural requirements accorded capital crime defendants are not applicable. See Cooper v. State, 453 So.2d 67 (Fla. 1st DCA 1984) (no indictment required where defendant accused of sexual battery of child eleven years or under since crime not punishable by death at time of charge); Hogan v. State, 427 So.2d 202 (Fla. 4th DCA 1983), approved, 451 So.2d 844 (Fla. 1984) (defendant charged with sexual battery of a child eleven years or under not entitled to twelve-member jury). See also Reino v. State, 352 So.2d 853, 858 (Fla. 1977) (post-Furman murder case when capital crimes did not exist in Florida; "It would be conceptually inconsistent to conclude that the procedural advantages inuring to a defendant in a capital case fall with the abolition of the death penalty and then conclude that the substantive disadvantages (limitation on entitlement to bail and unlimited statute of limitations) remain viable."). Compare Rowe v. State, 417 So.2d 981 (Fla. 1982) (legislative failure to repeal portion of rule that prohibited bail to person convicted of capital offense and repeal of rule allowing trial court to permit post-conviction bail for person previously convicted of a felony demonstrates legislative intent to prohibit bail pending appeal for person convicted of capital offense when that person sentenced to life). In contrast, in cases where death could have been imposed on the defendant, but was not, the failure to provide procedural requirements has been held to have voided the trial. See Milliken v. State, 398 So.2d 508 (Fla. 1981) (where appellant charged with sexual battery of a person under eleven years of age, and such was punishable by death, failure to obtain indictment voided trial, and State's argument that the crime was actually normal sexual battery and thus not punishable by death did not obviate the need for an indictment); Howard v. State, 385 So.2d 739 (Fla. 3d DCA), pet. for rev. dismissed, 389 So.2d 1114 (Fla. 1980) (failure to indict defendant charged with first-degree murder voided trial; noting that defendant was tried by six-person jury); Bradley v. State, 374 So.2d 1154 (Fla. 3d DCA 1979) (failure to indict voided trial).
[5] The length of the separation here and in Livingston  a weekend  is identical. Livingston, however, does not correlate the length of the separation to the presumptiveness of the harm. The essence of Livingston is separation during deliberation for any length of time sufficient to be exposed to outside influence: "jurors are especially sensitive to prejudicial influence during deliberations [since] [w]hile still hearing evidence, it is probably easier for jurors to keep an open mind." Livingston v. State, 458 So.2d at 238. But see State v. Bergeron, 340 N.W.2d 51, 59 (N.D. 1983) ("Absent a showing of actual prejudice, `we fail to see why the procedures [admonitions] ... deemed adequate during the trial to assure an impartial jury became less so once the jury has begun to deliberate.'") (ellipsis in original). Although we agree with the result in Franklin v. State, 472 So.2d 1303 (Fla. 1st DCA 1985)  that is, there is no error where defendant did not object to separation and the jury was admonished before separating  to the extent that the court suggests that cases involving overnight separations are distinguishable from Livingston, we disagree.
[6] Whether Livingston announced a new rule, and whether this new rule is of such "fundamental significance" as to warrant retroactive application under Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980), are matters we need not decide. Whether retroactive or not, the rule of law announced in Livingston, that is, that the separation of deliberating jurors in a capital case over the defendant's objection is per se reversible error, can obviously be of no help to Ulloa, who failed to object to the separation. The objection requirement is sensible. As the court in State v. Bergeron, 340 N.W.2d at 58, pointed out, "[a] defendant in some instances might wish to waive jury sequestration to prevent the jury from becoming uptight and uncomfortable."
[7] The court also noted in Engle (1) that counsel for the defendant was consulted and agreed to the separation, and (2) by its reference to Florida Rule of Criminal Procedure 3.370(b) (only juries which have been sequestered before deliberations need be sequestered during deliberations), that, unlike Raines, no rule or statute mandated that the jury be kept together once deliberations had begun. However, it is only the admonition or lack of admonition that goes to the integrity of the jury's fact-finding process, and thus, to the question of whether the separation of the jury is fundamental error.
[8] In State v. Sanders, 376 N.W.2d 196, 205 (Minn. 1985), the court notes that prejudice is rebuttably presumed from mere separation in those jurisdictions with statutes or rules prohibiting the separation of deliberating jurors. That presumption may be overcome, however, by a showing that a properly admonished jury obeyed the admonition. See, e.g., O'Neil v. State, 642 S.W.2d 259 (Tex. App. 1982). See also Annot., 72 A.L.R.3d 248, 253-54 (1976). We believe it fair to say, then, that the implicit holding of Raines is that the separation of the deliberating jurors in violation of an existing statute prohibiting such separation raised a presumption of prejudice which clearly was not overcome where the jury was not admonished before separating.
[9] In Livingston, the court also referred to Armstrong v. State, 426 So.2d 1173 (Fla. 5th DCA 1983), McDermott v. State, 383 So.2d 712 (Fla. 3d DCA 1980), and Kennick v. State, 107 So.2d 59 (Fla. 1st DCA 1958). In Armstrong, the jury was separated for fifty-two days during an in-trial continuance, and the defense counsel pointed to "specific articulable facts to support his concerns that the jury could have been influenced by extraneous matters," 426 So.2d at 1175. The court, as the court had done in McDermott, recognized that there was no "inflexible rule" concerning jury separation during trial. 426 So.2d at 1174. In Kennick, the separation complained of occurred before the jury was sworn. Obviously, none of these cases comes close to announcing a fundamental error rule.