SCHWARTZ, Chief Judge.
On October 23, 1984, the defendant’s three-year-old daughter, Joy, was terribly injured in a bizarre and tragic accident in which her head became caught in the footrest of a living room chair. She sustained severe head injuries caused by a lengthy deprivation of oxygen, which resulted in extensive brain damage. For some eight months, she remained in a chronic vegetative state, requiring continuous and intensive hospital care, but not artificial maintenance of her respiratory and circulatory functions. Then, on June 28, 1985, Griffith, who had become increasingly distraught over her condition, shot and killed her with two bullets in the chest as she lay in her hospital bed. He did so, he said, because “I didn’t want her to suffer anymore.”
Griffith was indicted by a grand jury and, after a trial at which insanity was the primary defense, convicted by a six-person petit jury of first degree murder. He was sentenced to the capital life sentence of life imprisonment without the possibility of parole for twenty-five years, § 775.082(1), Fla.Stat. (1985), and now appeals. We reverse for a new trial.
I
Before the process of jury selection began, the state apparently “waived” the right to seek a death sentence in this case. This “concession” was accepted on the record only by the defendant’s attorney,[1] and, based upon and as an aspect of that agreement, a six, rather than a twelve-person jury, was selected and considered the cause. We hold, as we do today in Rodriguez-Acosta v. State, 548 So.2d 248 (Fla. 3d DCA 1989) and Jones v. State, 548 So.2d 244 (Fla. 3d DCA 1989), that the defen *246 dant’s admitted failure personally to forego the twelve-person jury required by section 913.10, Florida Statutes (1985) and Florida Rule of Criminal Procedure 3.270 for the trial of capital crimes in Florida, requires a new trial. As the opinion in Rodriguez-Acosta elucidates, the silent record involved here is insufficient to demonstrate the required “knowing and intelligent” waiver of the defendant's rights in this regard. The recent decision of the supreme court in Brown v. State, 538 So.2d 833 (Fla.1989), which deals with the requirements necessary to demonstrate a defendant’s waiver of the right to the presence of the trial judge — a point conceptually indistinguishable from this one — conclusively establishes the invalidity of a waiver undertaken only by defense counsel as in this case.
The state alternatively contends that no defense waiver was required in the first instance, because — by virtue of its foregoing the death penalty and the practical, if not legal impossibility of its being imposed in this case, Brown v. State, 521 So.2d 110 (Fla.1988), cert. denied, — U.S. —, 109 S.Ct. 270, 102 L.Ed.2d 258 (1988) —the case was no longer a “capital” one which required a twelve-person jury at all. After extensive and careful consideration of this argument, we are compelled to reject it.[2] It can hardly be denied that first degree murder is, and was at the time of the commission of the offense charged in the grand jury indictment, a crime which was alternatively punishable by the death penalty. Since that is the case, we conclude, in common with every case on the pertinent issue, that capital procedural safeguards, specifically including the twelve-person jury, are applicable notwithstanding that a subsequent event, in the form of a state waiver or a life sentence after a jury verdict, has meant that no death sentence is or may be imposed. E.g., State v. Hogan, 451 So.2d 844, 845 (Fla.1984) (“a capital case is one where death is a possible penalty”); Lowe v. Stack, 326 So.2d 1 (Fla.1974) (first degree murder requires indictment rather than information); Bradley v. State, 374 So.2d 1154 (Fla. 3d DCA 1979) (same); State ex rel. Manucy v. Wadsworth, 293 So.2d 346 (Fla.1974) (same); Ulloa v. State, 486 So.2d 1373, 1375 n. 4 (Fla. 3d DCA 1986) (“In cases where death as a punishment was unavailable at the time the defendant was charged, the courts have held that the procedural requirements accorded capital crime defendants are not applicable.”); Nova v. State, 439 So.2d 255 (Fla. 3d DCA 1983) (twelve-person jury in a first degree murder case is fundamental right and validity of waiver may be considered pursuant to Fla.R.Crim.P. 3.850 even if not raised on appeal), pet. for review denied, 472 So.2d 1181 (Fla.1985); see Alfonso v. State, 528 So.2d 383, 384 (Fla. 3d DCA 1988) (“[T]he trial court’s pretrial decision not to impose a death penalty did not transform first-degree murder into a noncapital crime.”), pet. for review denied, 528 So.2d 1183 (Fla.1988). As Ulloa makes clear, the rule is different only in those instances — in which the death penalty is or was unavailable as a matter of law — that is, capital sexual battery, § 794.011(2), Fla.Stat. (1985), and first degree murder during the period between Fruman v. Georgia[3] and the revalidation of the death penalty in *247 Proffitt v. Florida. [4] Cooper v. State, 453 So.2d 67 (Fla. 1st DCA 1984) (information appropriate charging document and six-person jury proper in sexual battery case where death is not a possible penalty); State v. Hogan, 451 So.2d at 844 (sexual battery case is triable by six-person jury); Reino v. State, 352 So.2d 853 (Fla.1977) (two year statute of limitations applies in capital cases where offense was committed between Furman and date of new death penalty); see Snowden v. Donner, 464 So.2d 223 (Fla. 3d DCA 1985) (indictment not necessary in “capital crime” where death penalty is not possible), pet. for review dismissed, 469 So.2d 750 (Fla.1985).
Moreover, the supreme court, again very recently, has emphasized that — even as to these latter cases — appropriate principles of legislative intent may require that “capital crime” requirements be read into controlling procedural enactments. Thus, in Batie v. State, 534 So.2d 694 (Fla.1988), the court held that a “capital” sexual battery charge was a “capital offense” within the meaning of Florida Rule of Criminal Procedure 3.691(a), prohibiting bond on appeal, even though, as is obviously the case, the death penalty may not be imposed. We think that Batie removes any doubt as to the propriety of our present holding.
II
Since the case must be retried, we pass upon the other issues raised by the defendant and find that none have merit. The only one which deserves discussion is the argument that the trial judge erroneously refused to grant requested jury instructions concerning the claim that the victim was “brain dead” at the time of the incident so that, apparently, Griffith could not be guilty of killing her. For numerous reasons, there is nothing to this argument.
(1) For legal and medical purposes, where respiratory and circulatory functions are maintained by artificial means of support so as to preclude a determination that these functions have ceased, the occurrence of death may be determined where there is the irreversible cessation of the functioning of the entire brain, including the brain stem, determined in accordance with this section.
In the first place, it is undisputed that Joy did not qualify under section 382.-085(1), Florida Statutes (1985) (renumbered section 382.009, Florida Statutes (1987)) because her respiratory and circulatory functions were not maintained by artificial means of support and because there was no termination of the functioning of the entire brain. Thus, Joy was simply not “legally dead” within the meaning of section 382.-085(1).[5]
Second, and perhaps more important, even the existence of brain death would permit the final ending of life only in accordance with the medical and legal procedures carefully set forth in section 382.-085(2)-(4), Florida Statutes (1985). Under no circumstances do the terms of the statute, or anything else, permit a third party, as it were, to take the law into his own hands by ending whatever precious attributes of earthly existence which may remain. State v. Fierro, 124 Ariz. 182, 603 P.2d 74 (1979); Barber v. Superior Court, 147 Cal.App.3d 1006, 195 Cal.Rptr. 484 (1983); State v. Meints, 212 Neb. 410, 322 N.W.2d 809 (1982); State v. Velarde, 734 P.2d 449 (Utah 1986); see Gilbert v. State, 487 So.2d 1185 (Fla. 4th DCA 1986), review denied, 494 So.2d 1150 (Fla.1986).[6] We hold, in other words, that the tenuous nature of the victim’s hold to life cannot be a defense to a homicide case of any type.[7]
*248 III
Por these reasons, the conviction under review is reversed for a new trial with a twelve-person jury.

. On this issue the record shows only:
[THE COURT]: I think that’s by far the simplest way to do it. We will put 18 in and as I understand the death penalty is not sought and we are going to proceed with a six person jury; is that correct?
MR. LAESER: [Prosecutor]: My understanding, yes sir.
MR. KRASNtOW: [Defense counsel]: Yes, sir.

. Because our acceptance of this contention would have involved a conflict with several of our prior decisions, including Alfonso v. State, 528 So.2d 383 (Fla. 3d DCA 1988), pet. for review denied, 528 So.2d 1183 (Fla.1988); Ulloa v. State, 486 So.2d 1373 (Fla. 3d DCA 1986); and Nova v. State, 439 So.2d 255 (Fla. 3d DCA 1983), pet. for review denied, 472 So.2d 1181 (Fla.1985), we set this case along with Rodriguez-Acosta and Jones for hearing en banc. Our present determination to hold otherwise necessarily results, as wé now announce, in the discharge of the en banc orders. See Fraga v. Department of Health and Rehabilitative Servs., 464 So.2d 144 (Fla. 3d DCA 1984), pet. for review denied, 475 So.2d 694 (Fla.1985).
We do consider, however, and we so certify to the supreme court, that this case involves the following question of great public importance: Whether a twelve-person jury is required in a first degree murder case in which the prosecution waives the death penalty?

. 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

. 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

. 382.085 Recognition of brain death under certain circumstances.—

. This principle applies with equal, if not greater force, to situations in which a person is not even arguably ‘brain dead,” but in which appropriate circumstances exist which may justify a judicial determination to terminate life. John F. Kennedy Memorial Hosp., Inc. v. Bludworth, 452 So.2d 921 (Fla.1984); In Re Guardianship of Barry, 445 So.2d 365 (Fla. 2d DCA 1984); Satz v. Perlmutter, 362 So.2d 160 (Fla. 4th DCA 1978), approved, 379 So.2d 359 (Fla.1980); see Gilbert v. State, 487 So.2d at 1190-91; see also Public Health Trust v. Worts, 541 So.2d 96 (Fla.1989).

.This is not to say that the defendant's state of mind concerning the victim’s condition may not be pertinent to the vital issue of premeditation, on which the jury was fully instructed here.
*248 Moreover, our holding is restricted to the conclusion that no legal defense exists and may not be judicially created on this ground. Gilbert v. State, 487 So.2d at 1190-91. It does not mean that the circumstances of so-called "mercy killings” such as this may not be considered in prosecutorial decisions made by a grand jury or the state attorney concerning whether or on what charge an indictment or information should be returned. See Cleveland v. State, 417 So.2d 653 (Fla.1982). Furthermore, it cannot impede a petit jury’s exercise of its so-called "pardon power" in finding the defendant guilty of a lesser or of no offense even though the facts may justify (or even require) a greater offense under the letter of the law.
Finally, we note that there is no claim that the first degree murder sentence is constitutionally disproportionate to the facts of this case under the Eighth Amendment. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); see also Gilbert v. State, 487 So.2d at 1192; Winslade, Guarding The Exit Door: A Plea for Limited Tolerance for Euthanasia, 25 Hous.L. Rev. 517 (1988) (proposing a plea of mercy killing as limited defense reducing degree of offense). See generally Morgan & Harty-Golder, Constitutional Development of Judicial Criteria to Right-To-Die Cases: From Brain Dead to Persistent Vegetative State, 23 Wake Forest L.Rev. 721 (1988); Note, The Current State of Termination of Medical Treatment Case Law, 9 Nova L.J. 159 (1985); Note, Toward a Legally and Medically Acceptable Definition of Death, 5 Nova LJ. 471 (1981).